THE PEOPLE *ex rel.* Harold H. Rockwell, Appellant, *vs.*
THE CHICAGO TELEPHONE COMPANY, Appellee.—(THE
CITY OF CHICAGO, impleaded.)

*Opinion filed April 21, 1910—Rehearing denied June 8, 1910.*

1. MUNICIPAL CORPORATIONS—*grant to use streets is made in
governmental capacity.* In granting the use of its streets and al-
leys to a telephone company a municipal corporation acts as a gov-
ernmental agency of the State, and when the grant is accepted it
becomes a contract between the telephone company and the mu-
nicipal corporation in its governmental, and not in its proprie-
tary, capacity.

2. SAME—*individual citizens acquire no vested rights under the
contract between municipal corporation and telephone company.*
No individual citizen of the municipal corporation and no sub-
scriber to the telephone service of a telephone company acquires
any vested rights in the contract between the municipal corpora-
tion and the telephone company, created by the latter's acceptance
of a grant by the former of the right to use the streets and alleys.

3. SAME—*effect upon contract where part of municipal corpo-
ration is subsequently annexed to another city.* Where part of the
territory included within an incorporated town when a contract
with a telephone company was made is subsequently annexed to a
city, the power of the town to control the streets and alleys in such
territory is immediately transferred to the city, and while the lat-
ter cannot, without the telephone company's consent, repudiate the
contract, it has the same power as the town possessed to change
the contract with the consent of the telephone company and to re-
lieve the telephone company from the obligations of the old con-
tract and enter into a new one.

4. SAME—*power of a city to control its streets continues only
while they are within its limits.* The power of a municipal cor-
poration to regulate and control its streets and alleys continues
only so long as such streets and alleys remain within the corporate
limits of such municipality, and any attempt, by contract with a
telephone company or otherwise, to retain control over such streets
and alleys after they shall have become a part of another mu-
nicipal corporation is *ultra vires.*

5. SAME—*when abrogation of contract does not deprive munic-
ipality of any rights.* Where part of the territory of a town with-
in which a telephone company is operating under a contract with
the town is annexed to a city, the abrogation of the contract with-

in the annexed territory by the city and the telephone company and the making of a new contract does not deprive the town of any legal or constitutional rights.

6. SAME—*contract to use streets is subject to change of jurisdiction by annexation.* A provision in a telephone ordinance that the territory then embraced within the limits of the town should be regarded as one telephone exchange and that subscribers within such territory should not pay toll to converse with subscribers in other portions of the territory is subject to the change of jurisdiction wrought by annexation of part of the territory to a city, and such provision cannot be enforced against the telephone company after such annexation if the company and the city annexing the territory have made a new agreement abrogating such provision in so far as the annexed territory is affected.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

This was an application in the name of the People of the State of Illinois, to the circuit court of Cook county, for a writ of *mandamus* against the Chicago Telephone Company to compel it to furnish telephone service, without extra charge or toll, between subscribers in the village of Oak Park and subscribers in any other part of the territory which was embraced within the limits of the town of Cicero in 1898, including the territory locally known as Austin, which was detached from the town of Cicero and annexed to the city of Chicago in 1899. The petition for the writ was filed by Harold H. Rockwell, a citizen and tax-payer of the village of Oak Park and a subscriber to the company's telephone exchange service in that village, on behalf of himself and all other persons similarly interested. The telephone company filed its answer, to which the petitioner interposed a demurrer. Upon the motion of the telephone company the city of Chicago was made an additional party defendant to the petition. The city of Chicago moved to dismiss the cause of action as to it on the ground that it was neither a proper nor a necessary party to the suit. This motion was denied, and the city filed its

answer to the petition, to which the petitioner filed a demurrer. The demurrers to the answers were sustained, and, the respondents electing to stand by their answers, final judgment was entered by the court directing a writ of *mandamus* to issue against the Chicago Telephone Company, commanding it to forthwith transmit telephone calls, without an extra charge therefor, from subscribers in the village of Oak Park to subscribers in any part of the territory which was embraced within the town of Cicero in 1898, including the territory in the city of Chicago known as Austin, but denying the prayer of the petition in so far as it seeks a writ to compel the telephone company to transmit telephone calls, without extra charge, from subscribers in the territory locally known as Austin to subscribers in the village of Oak Park. All the parties prayed and were allowed appeals to this court. The record has been brought to this court by the petitioner. Errors have been assigned thereon by the petitioner and by the city of Chicago, and cross-errors have been assigned thereon by the Chicago Telephone Company.

The answer of the telephone company admits the allegations of fact contained in the petition but sets up matters not shown by the petition which it contends constitute a bar to the relief sought by the petition. The answer of the city of Chicago also admits the allegations of fact contained in the petition and joins in the prayer thereof, but seeks to have the writ of *mandamus* extended so that it will also compel the telephone company to furnish telephone service, without toll or extra charge, between subscribers in the whole of the city of Chicago and subscribers in any part of the territory which was embraced within the town of Cicero in 1898. The facts are therefore not in dispute, and are as follows:

The town of Cicero is now, and was in the years 1894 and 1898, a municipal corporation. During those years it included its present territory, and also the territory of the

present village of Oak Park, the territory of the present city of Berwyn, and that part of the city of Chicago which was then, and is now, locally known as Austin. On November 24, 1894, the board of trustees of the town of Cicero passed an ordinance granting to the Chicago Telephone Company, for the period of twenty-five years, the right to erect and maintain its poles, wires, cables and fixtures in, upon, along or under the streets, alleys and public ways within the limits of the territory in the town of Cicero then designated as Oak Park, Ridgeland and Austin. The ordinance contained ten sections, the first of which contained the grant. The second, third and fourth sections contained provisions relative to the method of construction and a reservation by the town of the right to repeal the ordinance in case of failure on the part of the company to comply with the terms and provisions thereof. The fifth section provided that the rates for telephone exchange service should not exceed the regular schedule of rates for like service in other places under like conditions in the company's territory. The sixth section provided that in consideration of the rights thereby granted, the company should allow the town of Cicero, or its legal successor, the use of the top cross-arm of all its poles in said territory for police and fire-alarm wires of the said town, and should furnish to the town of Cicero, free of charge, one set of telephone apparatus, with exchange service, at each town fire engine house, hose house and police station in said territory, and should also furnish such additional telephones, with exchange service, as the board of trustees might from time to time order for town business in said territory, at a reduction of twenty-five per cent from the regular exchange rates in force in the said territory. The seventh section subjected the company to all police ordinances and regulations of the town. The eighth section limited the time for construction, and the ninth section repealed all conflicting ordinances and contracts. The tenth

section provided that the ordinance should be in force from
and after its passage, provided the company should file
written acceptance thereof with the town clerk within thirty
days. The ordinance was approved by the president of the
board of trustees, and within thirty days after its passage
and approval the company filed with the town clerk its
written acceptance thereof upon the terms and conditions
therein set forth. Thereafter, on December 19, 1898, the
board of trustees of the town of Cicero passed an ordi-
nance repealing sections 1, 5 and 8 of the ordinance of
November 24, 1894, and enacting in lieu of those sections
and by way of amendment of the former ordinance four
new sections, numbered, respectively, 1, 3, 4 and 5. The
first section granted to the telephone company the right to
erect, construct, lay and maintain its poles, wires, cables,
conduits and fixtures in, upon, along or under the streets,
alleys and public ways within the town of Cicero until the
year 1947, "for the supplying to such citizens of the town
of Cicero as may contract therefor, and to the public, com-
munication and signals by telephone or other improved elec-
trical device, both locally and to outside points." The third
section provided "that the company's rates for telephone
exchange service in said territory shall not exceed its regu-
lar schedule of rates from time to time for like service
under like conditions in other places in said company's ter-
ritory." The fourth section was as follows: "The pres-
ent limits of the town of Cicero shall be considered as if
constituting the limits of one of the company's exchanges,
so that local subscribers in one part of Cicero may com-
municate with local subscribers in another part without
additional charge. For instance, such subscriber in Austin
exchange may communicate with subscribers in Berwyn
exchange without any charge beyond the company's estab-
lished rates, from time to time, to subscribers in such ex-
changes." Section 5 provided that poles, wires, cables and
fixtures thereafter erected or acquired by the company

should be considered and held to be maintained under and subject to the amended ordinance. Section 6 provided that the ordinace should take effect upon its passage and approval and the filing of an acceptance of it by the telephone company within thirty days after its passage. The ordinance was approved by the president of the board of trustees, and the company filed with the town clerk its written acceptance of the provisions thereof within the specified time. The telephone company constructed, and has ever since operated, its telephone system in the town of Cicero under these ordinances, and until January 1, 1909, furnished telephone service, without extra charge or toll, between all subscribers residing in the territory which was embraced within the town of Cicero in 1898, including subscribers in Oak Park and Austin.

On April 8, 1899, that portion of the town of Cicero known as Austin was duly annexed to the city of Chicago in accordance with the provisions of the act relating to annexation of cities, incorporated towns and villages, approved and effective April 25, 1889, and has ever since continued to be, and is now, a part of the city of Chicago. On November 5, 1901, the village of Oak Park and the village (now city) of Berwyn were duly organized as municipal corporations, embracing and wholly made up of territory included within the town of Cicero as that town existed in 1894 and 1898. On November 17, 1904, the board of trustees of the village of Oak Park passed an ordinance providing that the present and future telephone system of the Chicago Telephone Company in the village of Oak Park should thereafter be under and subject to the ordinances theretofore passed by the board of trustees of the town of Cicero. This ordinance was duly accepted by the telephone company.

At the time of the passage of the ordinance by the town of Cicero in 1894, and also at the time of the passage of the amendatory ordinance in 1898, the Chicago Telephone

Company was operating its telephone system in the city of Chicago and in many of the neighboring municipalities. It had since the year 1889, when numerous adjacent municipalities were annexed to the city of Chicago, maintained in the city of Chicago and in some of the neighboring municipalities telephone exchanges, generally known as neighborhood exchanges. The rates charged for telephone service between subscribers to the same neighborhood exchange were lower than the rates charged for general service within the city of Chicago or within the particular municipality in which such exchange was located, and a subscriber to a neighborhood exchange could only call subscribers not connected with the same exchange by paying an additional charge or toll for such service. Likewise it was the invariable custom of the Chicago Telephone Company, and of other telephone companies operating in municipalities in this State and in other parts of the United States, to charge, in addition to the established rates for local service in a municipality, an additional amount or toll against a subscriber in one municipality calling for telephone connection or communication with a subscriber in another municipality, this service being generally known as long distance service as distinguished from local service.

On November 6, 1907, the city council of the city of Chicago passed an ordinance granting to the Chicago Telephone Company the right to construct, maintain, repair and operate in the public streets, alleys and other public ways of the city of Chicago its system of wires, cables, poles, conduits, etc., until January 8, 1929, for furnishing telephone service within the city of Chicago, the ordinance further regulating the charges for the various kinds of service, which was approved by the mayor on November 6, 1907. Section 6 of this ordinance provides that the company, during the term of the ordinance, shall furnish, upon demand, telephone exchange service of various classes and kinds in the city of Chicago without discrimination, at the

same rates to all persons, firms and corporations who shall elect to take or use any of such classes of service, and that the company shall not charge more than ten cents for each conversation or message up to three minutes in duration, and not more than five cents for each additional minute, transmitted from any telephone located within the city of Chicago to any other telephone located outside of the city of Chicago but within fifteen miles of the present city hall in the city of Chicago or within one mile of the city limits and within the State of Illinois. This ordinance required the telephone company to file with the city clerk its acceptance of the ordinance and "a written surrender and waiver by said company of any right or privilege to thereafter construct, erect or maintain its conduits, cables, poles, wires or conductors within the city of Chicago under or by virtue of any ordinance, grant or license from the city of Chicago or from any other municipal corporation within any territory which now is or may hereafter be embraced within the limits of the city of Chicago," and that "upon the taking effect of the ordinance the company shall thereby be relieved from all future obligations under any ordinance under which it has theretofore operated in the city of Chicago." The telephone company filed its written acceptance of the ordinance with the city clerk, together with the written surrender and waiver of its rights under previous ordinances, grants and licenses, as required by the ordinance. The village of Oak Park, the city of Berwyn and the whole of the town of Cicero, as well as numerous other cities, towns and villages, are within fifteen miles of the Chicago city hall. From the adoption of the ordinance of November 6, 1907, until January 1, 1909, the telephone company was continuously engaged in the work of reconstructing its system in the city of Chicago and in making additions thereto in order to comply with the provisions of the ordinance of the city of Chicago, the company having been allowed eighteen months by the ordinance within

which to make such changes and additions. On January 1, 1909, the telephone company commenced to charge a minimum toll of ten cents for each telephone message between the village of Oak Park and that portion of the city of Chicago known as Austin, and on the fourth day of the same month the petition herein was filed.

HUGH H. HADLEY, (LEE D. MATHIAS, and CHARLES H. ROBINSON, of counsel,) for appellant, Rockwell; EDWARD J. BRUNDAGE, Corporation Counsel, (CLARENCE N. BOORD, of counsel,) for cross-appellant, the city of Chicago:

The ordinance of the town of Cicero granting to the Chicago Telephone Company the right to construct, operate and maintain a telephone system within its limits, and the acceptance thereof by said company, constitute a binding contract upon both of said parties until 1947. *Bank* v. *Arkansas City,* 76 Fed. Rep. 271; *Cable Co.* v. *Baltimore,* 66 id. 140; *Chicago* v. *Telephone Co.* 230 Ill. 157; *People* v. *Telephone Co.* 220 id. 238; *Railway Co.* v. *Chicago,* 176 id. 253; *People* v. *Railroad Co.* 178 id. 594; *Gas Light Co.* v. *Lake,* 130 id. 42; *Railway Co.* v. *Railroad Co.* 166 U. S. 557; *Quincy* v. *Bull,* 106 Ill. 337; *State* v. *Great Falls,* 49 Pac. Rep. 15; *Mahan* v. *Telephone Co.* 132 Mich. 242; *Telephone Co.* v. *Telephone Co.* 199 Ill. 324.

The annexation of the territory known as Austin to the city of Chicago carried with it, and was subject to, the obligations of this contract. *Belleville* v. *Turnpike Co.* 234 Ill. 428; *State* v. *New Orleans,* 41 La. Ann. 91; *Ex parte Folsom,* 131 Fed. Rep. 496; *Water-works Co.* v. *Washburn,* 129 Wis. 73; Abbott on Mun. Corp. 2120; *Johnson* v. *Railroad Co.* 18 Ky. L. 276; *People* v. *Deehan,* 153 N. Y. 529; *Gas Light Co.* v. *St. Louis,* 46 Mo. 121; *People* v. *Telephone Co.* 220 Ill. 238; *Railway Co.* v. *Hoffman,* 161 Ind. 593; *People* v. *Blocki,* 203 Ill. 363; *Chicago* v. *Stock Yards Co.* 146 id. 224; *Mt. Pleasant* v. *Beckwith,* 100 U. S. 514.

The obligations of this contract cannot be impaired by any legislative act of the State or subordinate municipal corporation. *Chicago* v. *Cicero,* 210 Ill. 290; *Mt. Pleasant* v. *Beckwith,* 100 U. S. 514; *Jacksonville* v. *Railway Co.* 67 Ill. 540; *Blair* v. *Chicago,* 201 U. S. 400; *Board of Education* v. *Blodgett,* 155 Ill. 441; *Atkin* v. *Kansas,* 191 U. S. 207; *Life Ins. Co.* v. *Austin,* 168 id. 685.

Such a contract cannot be amended or modified except by the mutual consent of the parties thereto. While the Chicago Telephone Company might enter into a contract with the city of Chicago to waive its rights under the ordinances of the town of Cicero, neither it, the State of Illinois nor the city of Chicago can cancel its obligations under that contract without the consent of the town of Cicero. *Cable Co.* v. *Baltimore,* 66 Fed. Rep. 140; *Railway Co.* v. *Hoffman,* 161 Ind. 593; *People* v. *Telephone Co.* 192 Ill. 307; *Railway Co.* v. *Garfield,* 68 N. J. L. 587; *Chicago* v. *Rothschild & Co.* 212 Ill. 590; *People* v. *Telephone Co.* 232 id. 260; *Madison* v. *Traction Co.* 235 id. 346; *Railway Co.* v. *Railroad Co.* 166 U. S. 557.

The telephone ordinance of the city of Chicago approved November 6, 1907, in so far as it attempts to relieve the Chicago Telephone Company from the obligations of its contract with the town of Cicero, is unconstitutional. U. S. Const. art. 1, sec. 10; *Graham* v. *Folsom,* 200 U. S. 248; Cooley's Const. Lim. (7th ed.) 403.

The ordinance contravenes the fourteenth amendment of the United States constitution, as well as section 2 of article 2 of our constitution, which provides that "no person shall be deprived of life, liberty or property without due process of law." The contract between the Chicago Telephone Company and the town of Cicero is "property," because "a contract is property." *Bank* v. *Black,* 129 Ind. 595.

Ordinances of a city are laws of the State within the meaning of the provision of the constitution prohibiting a State from passing any law impairing the obligation of a

contract. *Life Ins. Co.* v. *Austin,* 168 U. S. 685; *Belleville* v. *Turnpike Co.* 234 Ill. 428; *Board of Education* v. *Blodgett,* 155 id. 441; *Chicago* v. *Cicero,* 210 id. 290; *Railway Co.* v. *Railway Co.* 87 id. 317.

Section 6 of the Chicago telephone ordinance of November 6, 1907, provides that the Chicago Telephone Company, during the term of said ordinance, shall furnish, upon demand, telephone exchange service of various classes and kinds in the city of Chicago, "without discrimination, at the same rates to all persons, firms and corporations who shall elect to take or use any of such classes or kinds of service." The citizens of Austin being entitled to telephone to the town of Cicero without additional toll charges, it follows that all citizens of Chicago should have the same right. *People* v. *Railroad Co.* 178 Ill. 594; *Railway Co.* v. *Hoffman,* 161 Ind. 593.

HOLT, WHEELER & SIDLEY, and HOYNE, O'CONNOR, HOYNE & IRWIN, (CHARLES S. HOLT, and MACLAY HOYNE, of counsel,) for appellee:

Whenever any territory to which the ordinance of the town of Cicero of 1898 applied was annexed to another town or city or became incorporated as another town or city, the authorities of such other municipality, under the statutes of 1872 and 1889 relating to annexation, in force when the ordinance in question was passed, with the consent of the Chicago Telephone Company, could repeal, modify or enlarge the rights given or the obligations imposed by said section 4 or any other section, as far as they affected such detached territory in any manner, without regard to the intention of the legislative authorities of the town of Cicero in adopting said ordinance of 1898. *Cicero* v. *Chicago,* 182 Ill. 301; *Railway Co.* v. *Chicago,* 143 id. 641; *Snell* v. *Chicago,* 133 id. 413; *People* v. *Railroad Co.* 178 id. 594; *Parfitt* v. *Ferguson,* 159 N. Y. 111; *Simons Sons' Co.* v. *Telephone Co.* 57 Atl. Rep. 193; *Railroad Co.* v. *Mayor,*

77 Md. 352; *New Orleans* v. *Water-works Co.* 142 U. S. 79; *Railway Co.* v. *Hoffman,* 161 Ind. 593; *Camp* v. *Minneapolis,* 23 N. W. Rep. 845.

The General Assembly, representing the people at large, possesses full and paramount power over all highways, streets, alleys and like public places in the State, but it has always been the law and policy of Illinois to give complete control of public streets to the municipality within which they lie. The municipality holds its streets in its governmental and not in its private capacity, and the power in respect thereto vested in the city councils or boards of trustees of cities and towns is of a legislative character. They can, therefore, neither restrict themselves nor their successors by any irrepealable ordinances for the exercise of such power over streets except by express authority of the General Assembly. *Snell* v. *Chicago,* 133 Ill. 413; *Owen* v. *Brockport,* 208 id. 35; *Byrne* v. *Railway Co.* 169 id. 75; *Blair* v. *Chicago,* 201 U. S. 400; *Healy* v. *Deering,* 231 Ill. 423; 20 Am. & Eng. Ency. of Law, 221; *Railroad Co.* v. *Mayor,* 77 Md. 352; *Simons Sons' Co.* v. *Telephone Co.* 57 Atl. Rep. 193; *People* v. *Railroad Co.* 178 Ill. 594; *Storage Co.* v. *Chicago,* 235 id. 58.

When territory is detached from one municipal corporation and annexed to another it is no longer a part of the former for any purpose. When a part of a town or city is annexed to another town or city, the authority of the town or city from which the territory is detached over all streets lying therein immediately ceases, and thereafter the authorities of the town or city to which such territory is annexed will stand in the shoes of the former authorities and have entire control over and in respect to such streets. *Cicero* v. *Chicago,* 182 Ill. 301; *Railroad Co.* v. *Chicago,* 143 id. 641; *Owen* v. *Brockport,* 208 id. 35; *People* v. *Telephone Co.* 220 id. 238; *Snell* v. *Chicago,* 133 id. 413; *Railroad Co.* v. *Chicago,* 176 U. S. 646; *People* v. *Railway Co.* 232 Ill. 540; *Miller* v. *Pineville,* 89 S. W. Rep. 261;

*Moore* v. *St. Paul,* 85 N. W. Rep. 163; *Almand* v. *Railway Co.* 108 Ga. 417; *Toledo* v. *Edens,* 59 Iowa, 352; *Deneen* v. *Railway Co.* 150 Mich. 235; *People* v. *Railway Co.* 232 Ill. 540.

Mr. JUSTICE COOKE delivered the opinion of the court:

The errors assigned by the petitioner and by the city of Chicago question the action of the circuit court in refusing to extend the writ of *mandamus* so as to require the telephone company to transmit telephone calls, without extra charge or toll, from its subscribers in that portion of the city of Chicago known as Austin to its subscribers in any other part of the territory embraced within the town of Cicero in 1898, including the village of Oak Park, and also in refusing to extend such writ so as to require the telephone company to transmit telephone calls, without extra charge or toll, from its subscribers in any part of the city of Chicago to its subscribers in any part of the territory embraced within the town of Cicero in 1898. A right in favor of subscribers in that portion of the city of Chicago known as Austin to telephone to subscribers in Oak Park, Berwyn and Cicero without extra charge is claimed by virtue of the provisions of the ordinances of the town of Cicero passed November 24, 1894, and December 19, 1898. The contention that all subscribers in the city of Chicago have the right to telephone, without additional charge, to subscribers in Oak Park, Berwyn and Cicero is based upon the supposed right of subscribers residing in that portion of the city of Chicago known as Austin to telephone, without extra charge, to subscribers in Oak Park, Berwyn and Cicero, and upon the provisions contained in the ordinance passed by the city council of the city of Chicago on November 6, 1907, requiring the company to furnish telephone service to all subscribers in the city of Chicago without discrimination, it being contended by the petitioner and by the city of Chicago that as the telephone

company is required by its contract with the town of Cicero to transmit, without extra charge, telephone calls from its subscribers in that portion of the city of Chicago known as Austin to its subscribers in Oak Park, Berwyn and Cicero, it must, in order to comply with the provisions of the Chicago ordinance, furnish the same kind of service to all other subscribers in the city of Chicago, without discrimination.

The petitioner seems to regard the provisions of the ordinances of the town of Cicero which granted to the telephone company the right to use the streets and alleys located in the territory which was included within the limits of that town in 1898 as constituting a contract between the town and the telephone company, which could only be abrogated or changed, in so far as it affected or applied to the whole or any part of that territory, by consent of the town. That is an erroneous view of the effect of an ordinance by a municipality granting to a public service corporation the right to use the streets, alleys and highways located within the limits of the municipality.

Primarily the General Assembly, representing the people at large, possesses full and paramount power over all highways, streets and alleys in the State. In the distribution of governmental powers it has, however, delegated to municipalities the power to regulate and control the use of the streets and alleys within their respective limits, and municipal authorities, when exercising the power thus delegated, are acting in behalf of the State for the benefit of the people. (*People* v. *Suburban Railroad Co.* 178 Ill. 594; *Harder's Storage Co.* v. *City of Chicago,* 235 id. 58.) In granting to the Chicago Telephone Company a license to construct its poles, wires and other fixtures in the streets and alleys of the town, the board of trustees of the town of Cicero was exercising the power to regulate and control the use of the streets and alleys within the limits of the town which had been delegated to it by the General As-

sembly. It was exercising a legislative function as a governmental agency of the State, and the grant was made by the town in its governmental and not in its proprietary capacity. (*People* v. *Suburban Railroad Co. supra; Roby* v. *City of Chicago,* 215 Ill. 604.) The grant thus made was a license which, when accepted by the telephone company, became a contract between the town, as a governmental agency of the State, and the telephone company. (*City of Quincy* v. *Bull,* 106 Ill. 337; *People* v. *Chicago Telephone Co.* 220 id. 238; *City of Chicago* v. *Chicago Telephone Co.* 230 id. 157.) Neither the town of Cicero nor any other municipality succeeding to its governmental powers over the streets and alleys of the territory then included within the town of Cicero, or any part thereof, had or could have any right to repudiate the contract or take back the grant without the consent of the telephone company; (*City of Quincy* v. *Bull, supra;*) and likewise the telephone company would have no right to repudiate the contract or avoid the obligations imposed upon it by the ordinance without the consent of the governmental agency in control of the streets and alleys in which it desired to continue to maintain and construct its poles, wires and other fixtures. No individual citizen of the town of Cicero, as the town existed in 1898, and no subscriber to the telephone service of the company, obtained any vested rights under the contract between the town of Cicero and the telephone company. The board of trustees of the town of Cicero could, so long as it retained control over the streets and alleys in which it had granted to the company the right to construct and maintain its poles, wires and fixtures, with the consent of the company, change the terms and conditions upon which the company was granted the use of the streets and alleys without obtaining the consent of any of the citizens of the town or subscribers to the company's telephone service.

In 1899 that portion of the town of Cicero known as
Austin was detached from the town of Cicero and annexed
to the city of Chicago. The legality of the annexation was
established in the case of *Town of Cicero* v. *City of Chi-
cago,* 182 Ill. 301, and we there said: "When this terri-
tory [Austin] was detached from that corporation [Cicero]
it was no longer a part of it for any purpose, and the mu-
nicipal franchise [of the town of Cicero] could not extend
over it or operate within it for township or other purposes.
By the annexation the territory becomes subject to the
municipal powers of the city of Chicago." Upon the an-
nexation of the territory known as Austin to the city of
Chicago the power to regulate and control the use of the
streets and alleys and public ways in that territory was im-
mediately transferred from the town of Cicero to the city
of Chicago, and while the city of Chicago had no right to
repudiate the contract which had been made between the
town of Cicero and the telephone company with reference
to the use of the streets and alleys in that territory by the
telephone company, it did have the same right as the town
of Cicero had theretofore possessed to change that con-
tract, with the consent of the telephone company, or make
an entirely new contract with the company, and thereby
impose other or additional conditions upon which the com-
pany should thereafter use the streets and alleys in that
territory, or to relieve the company entirely from the per-
formance of the conditions attached to the grant by the
town of Cicero of the use of the streets in that territory
by the company, and the town of Cicero had no power to
deprive the city of Chicago of that right by inserting a
provision in the ordinance passed December 19, 1898, that
the limits of the town, as it then existed, should continue
to exist until the year 1947 for the purpose of subjecting
all the territory within such limits to certain provisions of
that ordinance. The legislature had granted to the town
of Cicero the power to regulate and control the streets and

alleys within its limits only so long as those streets and alleys remained within the limits of the town. Any attempt by the town to retain control of such streets and alleys after they ceased to be within the limits of the town was *ultra vires* and void, and any contract made by it with reference to the use of those streets and alleys must necessarily have been made subject to the right of the legislature to transfer jurisdiction over those streets and alleys to another municipality. The abrogation of such contract by another municipality to which the legislature has transferred the power of control formerly exercised by the town of Cicero over certain streets and alleys is not depriving the town of Cicero of any legal or constitutional right.

The city of Chicago, on November 6, 1907, passed an ordinance granting to the telephone company the right to construct, maintain, repair and operate in the public streets, alleys and other public ways of the city of Chicago its system of wires, cables, poles and other fixtures until January 8, 1929. That ordinance in express terms relieved the company from all future obligations imposed by any ordinance under which it had theretofore operated in the city of Chicago, and required the company, as one of the conditions of the grant, to file a written release and waiver of any right to construct, erect or maintain its poles, wires and other fixtures within the city of Chicago under or by virtue of any ordinance, grant or license from any other municipal corporation. By the acceptance of this ordinance the company was relieved of all its obligations under the ordinances of the town of Cicero in so far as they applied to any territory in the city of Chicago, and thereby received a new grant from the city of Chicago of the right to use the streets and alleys of the territory known as Austin upon different terms and conditions than those under which it had held such right under the grant from the town of Cicero. No obligation was imposed upon the company by the Chicago ordinance to furnish telephone communication,

without extra charge, between subscribers in the territory known as Austin and subscribers at any place outside the city of Chicago, but the right of the company to make an additional charge for such service was expressly recognized, subject to the limitation that the charge for communication from subscribers in the city of Chicago to subscribers residing within certain territory outside the limits of the city of Chicago should not exceed certain rates.

It follows that there was no error in the action of the circuit court in refusing a writ of *mandamus* to compel the telephone company to transmit telephone calls, without extra charge or toll, from its subscribers in the city of Chicago, or its subscribers in that portion of the city of Chicago known as Austin, to its subscribers in any other part of the territory embraced within the town of Cicero in 1898, including the village of Oak Park.

The cross-errors assigned by the telephone company question the action of the circuit court in awarding the writ of *mandamus,* commanding it to forthwith transmit telephone calls, without extra charge, from subscribers in the village of Oak Park to subscribers in any part of the territory which was embraced within the town of Cicero in 1898, including the territory in the city of Chicago known as Austin. There is no allegation in the petition that the company is making, or contemplates making, any extra charge for telephone service between subscribers in the village of Oak Park and subscribers in any part of the territory embraced within the limits of the town of Cicero in 1898, except the territory known as Austin. The right to telephone service, without extra charge, between subscribers in Oak Park and subscribers in any territory not embraced within the limits of the city of Chicago is therefore not an issue in this case and is not determined upon this appeal. The cross-errors must prevail for the reasons above stated in discussing the alleged right of subscribers in Austin to telephone to subscribers in the village of Oak Park.

When the company accepted the ordinance passed by the city of Chicago in 1907 it ceased to operate its telephone system in the territory known as Austin under the license from or contract with the town of Cicero. That territory was, upon such acceptance, withdrawn from the operation of the terms and provisions of the ordinances of the town of Cicero, notwithstanding the provision contained in section 4 of the ordinance of December 19, 1898, that the "present limits of the town of Cicero shall be considered as if constituting the limits of one of the company's exchanges, so that local subscribers in one part of Cicero may communicate with local subscribers in another part without additional charge." The telephone poles, wires and other fixtures in the territory known as Austin are now part of the telephone system which the company is operating in the city of Chicago under a contract with the city of Chicago. Moreover, the subscribers to the telephone service of the company in that territory are no longer local subscribers in Cicero, and are therefore no longer such subscribers as the local subscribers now residing in the town of Cicero or in the village of Oak Park are by section 4, *supra,* given the right to communicate with by means of appellee's telephone system without charge.

It is unnecessary to discuss any other questions argued by the parties upon this appeal. The answer of the telephone company was a complete answer to the petition, and the facts set up in that answer constitute a bar to the relief sought by the petition.

The judgment of the circuit court is therefore reversed and the cause will be remanded to the circuit court, with directions to overrule the demurrer of the petitioner to the answer of the Chicago Telephone Company.

*Reversed and remanded, with directions.*