J. W. Parker, 1050; Charles Cefala, 1058, Claimants, *vs.* State of Illinois, Respondent.

*Opinion filed September 11, 1928.*

*Rehearing denied October 24, 1928.*

Frank J. and James T. Burns for claimants.

Oscar E. Carlstrom, Attorney General; Frank R. Eagleton, Assistant Attorney General, for respondent.

Mr. Justice Thomas delivered the opinion of the court:

As these two claims involve practically the same questions of law and fact, they will be consolidated and heard together.

Claimant, Parker, is the owner of Lot 26 in Block 39 in the Village of Bradley and claimant, Cefala, is the owner of Lot 25 in Block 39 and also of Lots 21 and 22 in Block 41 of

said village. These lots all front on Broadway Avenue, a street extending east and west through the village. State Bond Issue Route No. 44, extending from Joliet to Kankakee, passes through the Village of Bradley on Broadway Avenue. This avenue terminated at or near the right of way of the Illinois Central Railroad. Just east of the Illinois Central right of way is the right of way of the New York Central Railroad. On October 8, 1923, the Department of Public Works and Buildings, Division of Highways, filed its application with the Illinois Commerce Commission for a crossing of State Bond Issue Route No. 44 under the tracks of these railroads in the village at the point of intersection of the extension of Broadway Avenue with the tracks and rights of way of the railroads. After a hearing the Commission granted the crossing and apportioned the cost thereof between the railroad companies, the State and the village.

The construction of this subway necessitated the lowering of the grade of Broadway Avenue in front of Block 39, and it has been stipulated that such depression of the grade damaged Lot 26 $1075.00 and Lot 25 $250.00, for which amounts claimants ask awards against the State. In its order apportioning the costs of the crossing the Commerce Commission directed that the village, as its portion of such costs, should secure all the necessary right of way for the extension of Broadway and pay all consequental damages to abutting property owners on account of the depression of the grade of that street.

The State claims this order makes the village liable to claimants for the damages to their lots caused by the depression of Broadway, while claimants insist they are not bound by the order and that the State should pay them the damages caused by such depression.

The control of railroad crossings has been conferred by law upon the Commerce Commission by the Public Utilities Act, approved June 29, 1921. (*Commerce Commission* v. *Omphghent Township,* 326 Ill. 65.) The legislature has the power to confer authority over the public highways of the State upon such local officials as it sees proper and to divide such authority in any manner it deems best. (*Stevens* v. *C. B. & Q. R. R. Co.,* 303 Ill. 49; *C. B. & Q. R. R. Co.* v. *Cavanagh,* 278 Ill. 609; *Egyptian Trans. System* v. *L. & N. R. R. Co.,* 321 Ill. 580.) The public highways of the State include the

streets and alleys within the corporate limits of cities and villages. (*The People* v. *Chicago Tel. Co.,* 245 Ill. 121.)

Section 58 of the Public Utilities Act provides: "The Commission shall also have power, after a hearing, to alter or abolish any grade crossing, heretofore or hereafter established; when in its opinion the public safety requires such alteration or abolition; or to require a separation of grades at such crossings; or to require a separation of grades at any proposed crossing where a proposed public highway may cross the tracks of any railroad or railroads; and to prescribe, after a hearing of the parties, the terms upon which such separation shall be made and the proportion in which the expense of the alteration or abolition of such crossings or the separation of such grades shall be divided between the railroad or street railroad companies affected, or between such companies and the State, county, municipality or other public authority in interest: Provided, that nothing in this Act shall be construed to repeal "An Act in relation to the crossing of one railroad by another," approved May 25, 1907, in force July 1, 1907.

"The Commission shall also have power by its order to require the reconstruction, alteration, relocation or improvement of any crossing (including the necessary highway approaches thereto) of any railroad across any highway or public road, whether such crossing be at grade or by overhead structure or by subway, whenever the Commission finds after a hearing that such reconstruction, alteration, relocation or improvement is necessary to preserve or promote the safety of the public or of the employees or passengers of such railroad. By its original order or supplemental orders in such case, the Commission may direct such reconstruction, alteration, relocation or improvement to be made in such manner and upon such terms and conditions as may be reasonable and necessary and may apportion the cost of such reconstruction, alteration, relocation or improvement between the railroad company or companies and other public utilities affected, or between such company or companies and other public utilities and the State, county, municipality, or other public authority in interest. The cost to be so apportioned shall include the cost of changes or alterations in the equipment of other public utilities affected as well as the cost of relocation, diversion or establishment of any public highway, made

necessary by such reconstruction, alteration, relocation or improvement of said crossing.'' Section 58 further provides that no highway or street shall be constructed across any railroad at grade without having first secured the permission of the Commission.

West Avenue is immediately west of the Illinois Central tracks and Washington Avenue is west of West Avenue, block 39 lying between these two streets. A copy of the findings and orders of the Commerce Commission entered in the proceedings had before it relative to this crossing has been introduced in evidence. It shows the Commission was of the opinion the public safety required the separation of the grades at the crossing of the railroads and Broadway Avenue and that such separation should be effected by the construction of a subway under the tracks of the railroads, and that the approach grades for the subway extended from Washington Avenue easterly to Schuyler Avenue east of the railroad tracks. The Commission found the estimated cost of the work and apportioned the entire expense thereof between the Illinois Central Railroad Company, the New York Central Railroad Company, the North Kankakee Electric Light & Railway Company, the Department of Public Works and Buildings, Division of Highways, of the State of Illinois, and the Village of Bradley. It is clear from the language of section 58 that the Commission had the power to apportion the cost and expense of the construction of the crossing between the companies affected, the State and the village. The statute expressly gives it that power. If the order of the Commission required the exercise of the right of eminent domain to determine the damages to property taken or damaged by the construction of the crossing or its approaches, such right could have been exercised by the corporation or municipality required by the order to pay such damages. (Sec. 59 Public Utilities Act.) The damages to the lots of claimants in Block 39 were occasioned by the construction of the approach to the subway crossing. When the Commission ordered that the village pay such damages it became the duty of the village authorities to either agree with claimants upon the amount, or, if unable to do that, to have the damages assessed by a jury as provided by the eminent domain act. The failure of the village to perform that duty did not relieve it of the obligation to do so. Neither did its failure in that re-

gard cast the burden of such damages upon either the railroads or the State. Such a construction would nullify the orders of the Commission and defeat the purpose and intent of the statute.

Claimants urge, however, that they were not parties to the hearing before the Commission and are, therefore, not bound by its orders. The Commission made no order affecting the rights of claimants. Claimants held their property subject to the right of the public to take or damage it for public use upon making just compensation for such taking or damage. It can make no difference to the owner of property taken or damaged for the public by whom his compensation is paid, whether by the State, some sub-division of the State, or some body corporate authorized by the State. When he has been justly compensated for his property he has received all he has the right to ask. The legislature has unlimited power to authorize the taking or damaging of private property for public use upon making just compensation. In the Public Utilities Act it has conferred upon the Commerce Commission the power to make orders that will result in the taking and damaging of private property for public use and to direct by whom the compensation for such property shall be paid. This the legislature might lawfully do, and in doing so it took from owners of private property no right. (C. B. & Q. R. R. Co. v. Cavanagh, supra.) The Commerce Commission having ordered the Village of Bradley to pay these damages of claimants, the State is not liable for them and no award therefor can be made by this court.

Claimant, Parker, also asks for $125.00 damages to his building caused by blasting. It is stipulated that the blasting which caused this damage was done by an independent contractor while lowering a sewer. The general rule is that the doctrine of respondeat superior does not apply where the damage is caused by the negligence of an independent contractor. There are exceptions to this general rule but as there is nothing in the stipulation to show that this case comes within any of the exceptions the general rule must be applied and the claim denied.

Claimant, Cefala, also asks $100.00 damages on account of injuries to the sidewalk abutting Lots 21 and 22 in Block 41. The declaration states that the servants of the State engaged in the construction of State Route 44 drove heavy

trucks on the sidewalk abutting these lots of claimant and so cracked and demolished it that it will be necessary to replace 16 sections of the walk. We hardly need remark that the sidewalk is not the property of claimant but is a part of the street. But were it a private walk of claimant, his claim could not be allowed. The declaration shows clearly that the injury to the walk was caused by the wrongful conduct of the drivers of the trucks, and the State is not liable for their wrongdoing. The State is never liable for the torts of its officers or agents. This has been announced so often and is such a well known principle that a citation of authorities is unnecessary.

Claimants refer to the consolidated cases of *Peterson et al.* v. *State* and say that the decision in those cases is *stare decisis* of the questions involved in these cases. In that contention claimants are in error. None of the questions involved in these cases were raised or decided in those cases. All the awards made in those cases were made under and because of a stipulation entered into by the Attorney General and the claimants and no questions of law were raised in the cases or decided by the court.

The claims will therefore be denied and the cases dismissed.

On October 24, 1928, upon petition for rehearing the following additional opinion was filed:

As these two cases involve practically the same questions of law and fact and were considered together by the court in the original opinion, the petition of the claimants for a rehearing will also be considered together.

After a careful consideration of the petition for a rehearing in the above cases, we find nothing in the petition that was not carefully considered and passed on by the court in the original opinion in these cases.

The decision heretofore rendered in these cases is, therefore, affirmed, and the petition for rehearing is denied.