W. J. BURNS, Appellee, v. C. C. COLE, Appellant.

Guarranty Against Default of Principal: INJURY FROM LACK OF NO-TICE OF DEFAULT: *Jury question.* Defendant contracted that his principal would procure title to certain land within six months, and convey it as security for a note, or that he would pay the note himself. His principal did acquire the title about two years thereafter, held it for a short time, and then mortgaged it to another, and it was lost under the mortgage. In an action against defendant he testified that, if he had known when his principal acquired the title, he could have gotten a conveyance from him. There was no evidence that the principal was insolvent. A prior suit had been brought against defendant on the same argeement some years before, and from that time he knew his principal's default. *Held* insufficient evidence of injury to defendant from want of notice of his principal's default, and etc., to go to the jury.

PRIMA FACIE CASE. In an action against the guarantor of a note, production of the note, showing no credits, and of the agreement of guaranty by plaintiff, to whom they had been assigned made a *prima facie* case.

LACHES. Action against a guarantor, commenced in 1897, before the running of limitations, was not barred by laches though default by the principal had been made in 1890, where it appeared that a prior action had been commenced against defendant in 1893 or 1894, which he caused to be dismissed by demanding a cost bond.

*Appeal from Polk District Court.*—HON. C. A. BISHOP, Judge.

SATURDAY, MAY 31, 1902.

ACTION at law upon an instrument in writing, whereby defendant undertook to pay the note of one Henderson. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*C. C. Cole* in pro. per.

*N. T. Guernsey* for appellee.

DEEMER, J.—The action is upon an instrument in writing, of which the following is a copy: "In consideration of one dollar and other good and valuable consideration to me paid and given by William Dunbar, I agree to and hereby guaranty that within six months from date hereof that W. C. Henderson will acquire title from the United States to the southwest quarter of section thirty-two (32), township four (4) north, of range two (2) west, containing one hundred and sixty (160) acres; said land being situated in Columbia county, Oregon; and I also further agree and guaranty that said Henderson, as soon as he shall acquire title to said land, that he will convey the same to said Wm. Dunbar as security for the payment of a certain promissory note, of which the following is a copy: 'Portland, Oregon, July 29, 1889. On or before two years after date, without grace, I promise to pay to the order of William Dunbar five hundred dollars, for value received,

with interest after date at the rate of eight per cent. per annum until paid. Principal and interest payable in United States gold coin at Portland, Oregon. And in case suit is instituted to collect this note or any portion thereof, I promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit. [Signed] W. C. Henderson.' In case said Henderson shall fail to either acquire title or to convey the same to said Dunbar as aforesaid, I hereby promise and agree to pay the above-described note and the interest that may become due thereon to. In witness whereof I have set my hand and seal this 30th day of July, 1889. [Signed] C. C. Cole." On the one hand it is contended that this is an absolute promise to pay plaintiff the note therein referred to; while on the other it is insisted that it is a guaranty simply; that there was no consideration either for the Henderson note or the agreement in suit; that no demand was made on Henderson for the payment of the note, and no notice given defendant of his failure to pay; that Henderson acquired title to the property mentioned, but that neither the plaintiff nor the payee of the note ever made demand on Henderson to mortgage or convey the real estate, nor did they notify defendant of his (Henderson's) failure to convey or mortgage, and that defendant was prejudiced by this failure to the extent of the amount of the note; that Henderson was solvent when he acquired title to the property and at the time the note matured, and that at the time of the commencement of this action he was insolvent, and unable to pay or secure the note; that defendant could have fully secured the claim when Henderson acquired title to the land had he been notified of the nonpayment of the note or of nonperformance on the part of Henderson. The case was tried to a jury, and the court submitted but one issue, to-wit, the question of consideration for the guaranty. On that queston there was a conflict of evidence, and with the finding, which was for plaintiff, we

should not interfere. There can be no doubt, under the evidence, that Henderson did acquire title to the land; that he held it for a short time thereafter, and finally mortgaged it to another, to secure money with which to make improvements on the land, and that the land was eventually sold under the mortgage, and lost to Henderson. It is true that Henderson acquired title to the land about two years after the instrument in suit was executed, and that he never offered to convey or mortgage the same to Dunbar or his assignee. He executed the mortgage on the land about the year 1892, and this mortgage was foreclosed, and the land sold thereunder. When the case was submitted to the jury, the only evidence regarding loss to defendant was as follows: "At the time Mr. Henderson acquired the title to the property, if I had been notified that he had failed to make the conveyance according to his agreement, I could have gotten the conveyance from him in accordance with the agreement, I am sure, by reason of my relations with him; or if I could not by reason of my relations I could under the law, because he had a homestead in Portland; and he had this land,—160 acres—, the value of which was quite more than the amount of his note with its interest. I had no notice at all, direct or indirect, in respect of it until the land was disposed of by him. It was four years after the transaction, I think, or more, before the suit, and I think Henderson had disposed of the land before that." It will be noticed that according to the terms of defendant's agreement Henderson was to procure title within six months from the date of that instrument, and that he (Henderson) mortgaged the property to another a short time after he obtained title, which was two years after the agreement was executed. In no event, then, could defendant have obtained security on the land until the two years had expired; and when the case was submitted there was no evidence regarding Henderson's solvency. As Hender-

son was in default long before he obtained title to the land, notice of his failure to obtain title or to convey or mortgage the land, would, according to defendant's theory, have been of no avail until the title was obtained. There is no showing that Henderson would have mortgaged the same to defendant, and no evidence that at the time of trial he (Henderson) was insolvent. Suit was commenced against defendant on this same agreement in the year 1893 or 1894, and defendant then had notice of Henderson's default. There is no showing that at that time he (Henderson) was insolvent. From this record it is apparant that there is no such showing of prejudice from failure to demand performance and to give notice to the guarantor of the principal's default as to justify the court in submitting that issue to the jury. A jury might have found from this evidence that perhaps the defendant could have induced Henderson to make a deed to Dunbar, but at that time neither Dunbar nor his assignees was required to accept it; or it might have found that he (defendant) could have collected the amount from Henderson; but there was no evidence when the case was submitted to the jury that he could not have done the same thing when this action was commenced. After the jury returned its verdict, and was discharged, and at a subsequent term of court, defendant offered evidence to show that Henderson was insolvent from the time he mortgaged the land down to the time the evidence was introduced. We do not understand on what theory or issue this was offered. It was objected to by plaintiff, and defendant then stated that the evidence had been omitted through an oversight, and asked permission to offer it at that time. This was long after the verdict had been returned, and while the case was pending on a motion for a new trial. This evidence was not germane to anything contained in the motion for a new trial, and, of course, should not be considered in determining the correctness of the court's instructions to the jury. The record

recites, however, that defendant filed a motion for re-hearing and reconsideration of the case, and that this motion was overruled, to which exception was taken. There is no assignment of error challenging this ruling, and, if there were, we would not be disposed to sustain it, for the matter was so largely discretionary with the trial court that we should not interfere on the record before us. The trial court may have concluded there was no oversight on the part of the defendant, or that his delay was such as to bar him of relief. In submitting but the one issue to the jury, there was no error.

Complaint is made because of the taxation of attorney's fees. This matter was not presented to the trial court, nor is there a sufficient assignment of error to properly bring the matter before us. No pronouncement need, therefore, be made thereon. Further, it is contended that there is no evidence that the original debt was not paid. Plaintiff produced both the original note and the agreement, and it was admitted that Henderson had failed to make the deed or mortgage as agreed. The note did not show any credits, and the instruments were both in the possession of plaintiff, to whom they were duly assigned. This made out a *prima facie* case. *Junge v. Bowman*, 72 Iowa, 648; *O'Brien v. Stambach*, 101 Iowa, 49. Defendant also claims there was such delay on the part of the plaintiff as discharges him. The statute of limitations had not run, and it is only because of his relation to the transaction that delay should be considered. In view of the fact that suit was commenced against defendant first in 1893 or 1894, which he caused to be dismissed by demanding a cost bond, and the further fact that this action was commenced early in the year 1897, we are constrained to hold there was no such delay as will defeat plaintiff's claim.

For the purpose of the case we have treated the instrument sued on as a guaranty, and not as an absolute

proimse to pay. Plaintiff's counsel seriously dispute this proposition, and in a learned argument contend that the promise is absolute, and that none of the rules which we have discussed apply. This question is of some difficulty, and, in view of the conclusion reached, we do not feel called upon to decide it at this time. We have simply assumed, for the purposes of the case, that the instrument is a guaranty, without intending that what is said should be taken as a precedent on this proposition.

The judgment is right, and it is AFFIRMED.