[No. 10384. Department Two. August 21, 1912.]

THE CITY OF SPOKANE, *Respondent*, v. M. H. THOMPSON
*et al., Appellants.*[1]

ATTORNEY AND CLIENT — APPEARANCE — EMINENT DOMAIN — PROCEEDINGS. Where a railroad company had agreed to pay the damages awarded against a city in a street condemnation, it had a direct interest in the proceedings and it was not error to allow its attorney to represent the city.

EMINENT DOMAIN — PUBLIC USE — CHANGE OF STREET GRADE — ACCOMMODATION OF RAILROAD COMPANY. Under Rem. & Bal. Code, § 7507, providing that a city may authorize or prohibit the maintenance of a railroad in streets and prescribe the conditions thereof, the granting of a franchise to a public service railway corporation to cross a street at a specified height, and changes of street grades in the vicinity to meet the necessities of the railroad grade, are for a public use, notwithstanding that the railroad company agreed to pay all condemnation awards against the city.

[1]Reported in 126 Pac. 47.

SAME — PROCEEDINGS — PARTIES PLAINTIFF. Condemnations for street grade changes to meet grades of a railroad company, which agreed to pay all condemnation awards against the city, are properly prosecuted in the name of the city.

SAME—DAMAGES—RULE OF ASSESSMENT—OFFSET OF BENEFITS. In condemnations for street grade changes to meet grades of a railroad company, the railroad agreeing to pay all condemnation awards against the city, being for the public benefit and not solely in the interest of the company, and being prosecuted in the name of the city, the damages are to be assessed under Rem. & Bal. Code, § 7782, and Const., art. 1, § 16, permitting cities to offset special benefits against the damage, and not under Id., § 926, authorizing damages against a railroad company irrespective of any benefit to the property.

SAME—DAMAGES—OBSTRUCTION OF ALLEY. The closing of a 16-foot alley by the change of grade of a street is a special damage to the property abutting on the alley.

SAME—DAMAGES—EVIDENCE. In condemnation proceedings to assess the damages from the elevation of F. street, evidence as to damages from the obstruction of an alley by a change of D. street is not admissible, not being an issue.

SAME. In condemnation proceedings to assess the damages to an abutting lot by reason of a change of street grade elevating the street through the entire block, it is error to confine the evidence of damage to that part of the street immediately in front of the lot.

Appeal by defendants from a judgment of the superior court for Spokane county, Kennan, J., entered March 6, 1912, upon the verdict of a jury assessing damages to abutting property from a change of grade. Reversed.

*Graves, Kizer & Graves,* for appellants.

*F. M. Dudley,* for respondent.

ELLIS, J.—Action by the city of Spokane to ascertain and assess the damage to abutting property by a change of grade of Front avenue. The city by ordinance changed the grade of Front avenue and of Division street, which intersect each other, the former running east and west, the latter north and south. It then by ordinance provided for the institution of condemnation suits against the owners of abutting properties. This action relates only to the change of grade of Front avenue, and includes as defendants all the

owners of properties abutting upon the part of that street
so changed. The action was tried separately as to the
defendants Thompson, owners of lot 4, in block 9, in Haver-
male's addition to Spokane, which lot abuts upon the south
line of Front avenue, 150 feet west of Division street. From
a judgment entered upon a verdict for $2,700 in their favor,
the defendants Thompson and wife appealed.

The appellants have made thirty-one assignments of error,
but they may be grouped for discussion.

(1) Several of the assignments relate to the rulings of
the trial court by which the appellants were prevented from
showing to the jury the connection of the Chicago, Mil-
waukee & Puget Sound Railway Company with the case.
That relation, as shown by the evidence and offered evidence,
is as follows:

The city by ordinance, granted to the railway company
the right to construct, maintain and operate a railway along,
over, under, upon and across certain streets and alleys,
among them the right to cross Division street. The ordinance
prescribed the locations and elevations at which the tracks
shall cross the various streets, the material provisions relating
to the Division street crossing being as follows:

"That said main line tracks shall be constructed and
maintained over and across those portions of Center and Divi-
sion streets lying between the north line of Front avenue, in
the city of Spokane, and a line parallel therewith and one
hundred and fifty-eight (158) feet northerly therefrom. . . .

"Said main line tracks shall be carried across said Division
street at an elevation of approximately nine and three-tenths
(9.3) feet below the present established grade of said street;
and the said grantee, its successors and assigns, may and
shall provide for the carrying of said Division street over
and above any and all tracks to be constructed by the said
grantee, its successors and assigns, by a suitable viaduct in
the manner hereinafter more particularly set forth and
described. . . . .

"The said freight and passenger tracks, yard tracks,
switches and spurs hereinbefore referred to, shall be carried

across said Division street between the north line of Front avenue and a line parallel therewith and one hundred and fifty-eight (158) feet northerly therefrom, underneath the viaduct to be constructed over said tracks as herein elsewhere provided. . . . .

"The city of Spokane shall, as soon as practicable, proceed to change the established grade of that portion of Division street lying between the Great Northern railway tracks and Main avenue; also that portion of Front avenue lying between Browne and Market streets, and shall cause to be prepared plans and specifications for the regrade of those portions of said street and avenue hereinbefore described, and for a viaduct to be constructed for the purpose of carrying public traffic over, across and above the tracks herein authorized to be constructed across Division street, at an elevation of approximately twenty (20) feet above the level of said main tracks, so that the established grades of said Front avenue and Division street shall not exceed four (4) per cent; . . . And said city of Spokane shall thereupon institute and diligently prosecute such proceedings as shall be necessary for the assessment of the damages, if any, to abutting property by reason of the changes of grade and the construction of the viaduct hereinbefore provided for which said damages when ascertained, shall be paid by the grantee, together with the costs and expenses of such proceedings, excepting attorney fees; and the grantee for itself, its successors and assigns, agrees to indemnify and hold harmless the city of Spokane against any claims for damages by reason of such changes of grade and the construction or maintenance of said viaducts; . . . .

"The said viaducts shall be constructed by and under the authority and direction of the city of Spokane and upon such plans and specifications as said city shall authorize, but at the expense of the grantee, and shall at all times be under the control and supervision of said city; . . . .

"Said grantee also agrees, at its own expense, to make and complete the changes of grade herein provided for in respect to the portions of Division and Market streets and Front avenue hereinbefore described, including the restoration of the surface of said streets by repaving or otherwise, all to the approval of the board of public works."

The streets material to this inquiry crossing or running into Front avenue enumerating from west to east are Washington, Center, Brown, Division, Market, and Colfax. Between Washington street on the west, and the point east of Colfax street on the east, the tracks of the railway company occupy a zone from 150 to 158 feet in width parallel with and abutting upon the north line of Front avenue. The avenue is not crossed nor occupied by the tracks of the railway company in the neighborhood of Division street. These tracks do, however, cross Center, Division, Market and the other north and south streets which intersect Front avenue a short distance south of such railway crossings. The grade of the tracks at the Division street crossing being fixed by the city at 9.3 feet below the existing street grade, it was necessary to either lower the grade of Division street so as to make a grade crossing or elevate the street so as to permit travel to pass above the tracks on a viaduct. The city adopted the latter plan, and provided that the viaduct should be approximately 20 feet above the tracks in order to give clearance for trains, thus elevating the street grade at the point of crossing approximately 11 feet. This point was less than 158 feet north of the intersection of Division street with Front avenue. In order to make a practicable approach, the foot of the incline was started at Main avenue, a street parallel with and one block south of Front avenue, thus raising the grade of Division street about eleven feet at its intersection with Front avenue. This necessitated either a corresponding raise of the grade of Front avenue in order to preserve the connection between the two streets, or a breaking of that connection by carrying Division street over the avenue by a viaduct. The city adopted the first plan. In order to make a 4 per cent grade, the change began at the east line of Brown street, the first north and south street crossing the avenue to the west of Division street, the rise being uniform from there to a height of about eleven feet at the intersection of the avenue with Division street. This makes the grade in front of appellants'

lot about 6½ feet at the west line and 7½ feet at the east line above the former grade. The railway company, by accepting the franchise, was obligated to pay all damages awarded against the city by reason of the change of grade. The attorneys for the railway company, over the objection of the appellants, were permitted to represent the city in this suit.

This last objection may be disposed of at once. The railway company having agreed to pay the damages, had a peculiar interest in the suit. The appearance of its attorneys was in no manner prejudicial to the appellants.

In order to conserve space, we will not detail the offered evidence. It will suffice to say that it included the franchise ordinance as a whole; and when that was rejected, § 9 of that ordinance, which contains the undertaking on the part of the railway company to pay all damages resulting from the changes of street grades made necessary by constructing the railroad tracks as provided in the ordinance. There were also various offers of evidence to show the purpose of the change of grade of Front avenue and the relation of that change to the change of grade of Division street.

The appellants first contend that this offered evidence was competent as showing that the purpose of the change of grade was a private and not a public or municipal purpose, and that the city therefore could not maintain this action.

The respondent contends that the question of public use was not in issue at the time the offer of this evidence was made, and that by the failure to raise the question before the jury was empanelled, the appellants had waived the question of public use; and, moreover, that the offer was not made for the purpose now claimed but only for the purpose of augmenting the damages. We find it unnecessary to decide whether, under the circumstances, this question was sufficiently raised or was raised in time, since in any event the evidence offered would not have shown that the change of

grade was not for a public use. Every city of the first class is by statute expressly empowered:

"To authorize or prohibit the locating and constructing of any railroad or street railroad in any street, alley, or public place in such city and to prescribe the terms and conditions upon which any such railroad or street railroad shall be located or constructed," etc. Rem. & Bal. Code, § 7507, subd. 9.

Since the use of streets can be permanently granted only for public purposes, the right to lay tracks in the streets can only be granted to public service railway companies and only for use in their public service. This statutory power is therefore dependent for its validity upon the fact that such railroads are public utilities. Its validity rests upon the same public considerations as does the grant of power of eminent domain to railroad corporations. The power in both instances is referable to the public interest, and not to the private benefit of the railway company. *Chicago Dock & Canal Co. v. Garrity*, 115 Ill. 155, 3 N. E. 448; *Glaessner v. Anheuser-Busch Brewing Ass'n*, 100 Mo. 508, 13 S. W. 707; *Mikesell v. Durkee*, 34 Kan. 509, 9 Pac. 278; *Butler v. Penn Tobacco Co.*, 152 N. C. 416, 68 S. E. 12, 136 Am. St. 831; *Hatfield v. Straus*, 189 N. Y. 208, 82 N. E. 172; *Swift v. Delaware, L & W. R. Co.*, 66 N. J. Eq. 34, 57 Atl. 456; *Mayor etc. of Macon v. Harris*, 73 Ga. 428; *Grand Trunk & Western R. Co. v. South Bend*, 174 Ind. 203, 89 N. E. 885, 91 N. E. 809, 36 L. R. A. (N. S.) 850; *Knapp, Stout & Co. v. St. Louis Transfer R. Co.*, 126 Mo. 26, 28 S. W. 627.

That the railway company here involved is a public service corporation is not questioned, nor is it contended that the track crossing Division street is not intended for use in connection with the public functions and uses of that company. The granting of the franchise to cross the street was, therefore, an appropriation of the street to a legitimate public use. *Dulaney v. United R. & Elec. Co.*, 104 Md. 423, 65 Atl. 45. In exercising the power to make the grant the city exercised

a legislative function as a governmental agency of the state. *People ex rel. Rockwell v. Chicago Tel. Co.*, 245 Ill. 121, 91 N. E. 1065; *Murphy v. Chicago, R. I. & P. R. Co.*, 247 Ill. 614, 93 N. E. 381; *State ex rel. Rose v. Superior Court*, 105 Wis. 651, 81 N. W. 1046, 48 L. R. A. (N. S.) 819; *Grand Trunk & W. R. Co. v. South Bend, supra.* It must be presumed that this power, which is granted to cities for the public good, has been exercised in the public interest, and that the level of the tracks across Division street prescribed by the city is that best adapted to the public interest. This was a matter within the discretion of the city, and its decision will not be reviewed in the absence of plain abuse. The offered evidence was insufficient to show such an abuse. It is also well established that a city in the exercise of its police power over the streets has authority to change the grade of a street to avoid a dangerous railroad crossing and that such a change is for the benefit of the public and is a public use. *Summerfield v. Chicago*, 197 Ill. 270, 64 N. E. 490; *Weage v. Chicago & W. I. R. Co.*, 227 Ill. 421, 81 N. E. 424, 11 L. R. A. (N. S.) 589; *Henderson v. Lexington*, 33 Ky. Law 703, 111 S. W. 318; 1 Lewis, Eminent Domain (3d. ed.), § 307.

If in time past the railway company had been granted a franchise to cross Division street with its tracks at grade and the tracks had been so constructed and the city had, in the exercise of its police power, subsequently required the elevation of the street so as to carry travel over the tracks on a viaduct and avoid a dangerous crossing, as now contemplated, no one would contend that such a change was not for the public benefit or that the consequent damaging of abutting property was not for a public use. Manifestly it can make no difference, either as to the benefit to the public or as to the character of the use, that the elevation of the street is required in the first instance and the dangerous crossing avoided from the beginning. Nor does it alter the case that the city in the ordinance granting to the railway company

the license to cross the streets required that company to pay the expense of such changes and the damages resulting therefrom. The city had the power to make the changes at its own expense if in the exercise of its legislative governmental functions it deemed them for the public benefit. That it entered into a contract with the railway company whereby that company undertook to pay the expense in no manner affects the character of the use. *Summerfield v. Chicago*, *supra*.

"In regulating and controlling the use of the streets and alleys within its limits, and the maintenance and operation of railroads upon and over them, the city is in the exercise of a governmental function. An ordinance granting authority for such purpose and fixing the rights and liabilities of the railroad companies is a legislative act, even though it may by the act of the companies become also a contract." *Murphy v. Chicago, R. I. & P. R. Co.*, 247 Ill. 614, 93 N. E. 381.

See, also, *People ex rel. Rockwell v. Chicago Telephone Co.*, 245 Ill. 121, 91 N. E. 1065; *Appeal of New York & N. E. R. Co.*, 58 Conn. 532, 20 Atl. 670; *Chicago, B. & Q. R. Co. v. State ex rel. Omaha*, 47 Neb. 549, 66 N. W. 624, 53 Am. St. 557, 41 L. R. A. 481; *New York & N. E. R. Co. v. Bristol*, 151 U. S. 556; *Kaufman v. Tacoma, Olympia, & G. H. R. Co.*, 11 Wash. 632, 40 Pac. 137; *State ex rel. Thomas v. Superior Court*, 42 Wash. 521, 85 Pac. 256.

The question must be resolved contrary to the appellants' contention upon the consideration that the grant of the right to cross the street with railroad tracks was an appropriation of the street to a legitimate public use. It follows as a corollary that all changes in adjacent streets made necessary thereby are likewise legitimate public uses for which the city may take or damage property upon paying compensation. The proceedings were properly brought in the name of the city. While it is true that in *Spokane Traction Co. v. Granath*, 42 Wash. 506, 85 Pac. 261, the suit was maintained in the name of the railway company, the right of that com-

pany to bring the proceedings seems not to have been questioned. Since the city alone can change the grade of a street, it would seem that logically condemnation for such change should be instituted by the city.

(2) It is next contended that the offered evidence as to the purpose of the change of grade of Front avenue was in any event admissible upon the question of damages. It is argued, that this evidence would show that the change of grade was made solely in the interest of the railway company; that the change must therefore be treated as made by the railway company and that the damages should be assessed under Rem. & Bal. Code, § 926, irrespective of any benefit to the property from the change, thus avoiding the rule of damages prescribed by Rem. & Bal. Code, § 7782, and the state constitution, art. 1, § 16, permitting special benefits to be offset against the damages in condemnations by municipalities. An instruction of the court in accordance with the last mentioned statute is also assigned as error. What we have already said effectually disposes of this contention. If, as we have hereinbefore held, the evidence offered was not sufficient to show an abuse of the legislative discretion reposed in the city council in granting the franchise to lay the railroad tracks across Division street, then the change of grade of Front avenue, made necessary by the railroad crossing on Division street, was not made solely in the interest of the railway company but in the interest of the public. As we have seen, the damaging resulted from the lawful exercise of discretionary powers vested in the city for the public benefit. Whatever injury was done to appellants' property "was done by the city in the exercise of its municipal control over the streets." *Brown v. Scranton*, 231 Pa. St. 593, 80 Atl. 1113.

The proceedings being properly brought in the name of the city. It follows that, under the express terms of the statute and art. 1, § 16 of the state constitution, special benefits if there are any must be offset against damages. The question is no longer an open one.

In *Kaufman v. Tacoma, Olympia & G. H. R. Co., supra,* at pages 636 and 637, this court said:

"The city changed the grade of the street and authorized its improvement by the construction of a tunnel and the building of a plank roadway thereover. This could have been done solely for a municipal purpose, and the special benefits arising therefrom could have been offset against, or, if blended therewith, taken into consideration in arriving at the damages sustained by abutting property owners.

"As to the rule of damages, the constitutional provision aforesaid makes no distinction as to the purposes for which land is taken or damaged, except as it may be limited by the powers of the party taking, but it does make a distinction as to persons. A municipal corporation can assess or offset benefits. No other can. The city having changed the grade and authorized the improvement of the street as aforesaid, if it was an improvement, it should make no difference as to the rule of damages whether the city contracted for the performance of the work directly, or simply empowered another party to perform it. This could not alter the case as to the respondents. . . .

"The improvement of this street was the city's property— the city's work—and in an action brought for damages, benefits could have been taken into consideration. The question is determined by determining who caused the injury, if any. Clearly the city changed the grade and authorized the improvement. No other power, unless possibly the legislature, could have done this. The railroad company had no such rights."

See, also, *Spokane Traction Co. v. Granath, supra,* which cannot be soundly distinguished from the *Kaufman* case, which it cites with approval on the point here under discussion. The offered evidence would not have justified the court in dismissing the proceedings. It would not have affected the rule of damages. The court committed no error in rejecting it.

(3) Certain assignments of error are predicated upon the refusal of the court to receive evidence of damage to appellants' property by reason of the obstruction of the easterly end of the alley in the rear of their lots by the elevation of

the grade of Division street. The alley is parallel with Front avenue and does not open into that avenue at all. The court did admit evidence of the effect upon the appellants' property in its use of the alley produced by the raise of grade of Front avenue in front of the property on an average of about 7 feet, the alley remaining at the former level. It excluded evidence as to damages which would result from the obstruction of the east entrance to the alley by raising the grade of Division street. In this we find no error. These proceedings are brought for the single purpose of assessing the damages which would result from changes in grade of Front avenue. Damages resulting from the change of grade of Division street are not in issue in this proceeding. There can be little question under the authorities cited by the appellants that the closing of one end of a 16-foot alley is a special damage to all property abutting upon that alley for which the owners would have a right of action. *Brown v. Seattle*, 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161; *Sweeney v. Seattle*, 57 Wash. 678, 107 Pac. 843; *Dries v. St. Joseph*, 98 Mo. App. 611, 73 S. W. 723. Such damages, however, cannot be assessed in this action which relates solely to the damages resulting from the elevation of the grade of Front avenue.

There was some evidence that the elevation of Front avenue would make the alley more beneficial than it otherwise would be as an access to the basement of any building placed upon the lot. Evidence that the alley was no thoroughfare would be admissible to rebut such evidence of benefit but not as an element of damage. The cause of the obstruction of the alley would be immaterial in this action.

(4) The court confined the evidence as to the change of grade to that part of Front avenue immediately in front of appellants' lot and included within the side lines of the lot produced. By instruction it restricted the consideration of the jury to that specific part of the grade and the recoverable damages to those resulting alone therefrom. In a majority of cases, such a ruling would be fair to neither side. It is

obvious that the damage peculiar to the lot which would be caused by the change of grade immediately in front of it might be either augmented or diminished by the relation of that change to the changes in the grade of the same street extending in either direction from that point. While the question is, as contended by the respondent, one of access to the lot, the effect of the change of grade on that access is manifestly dependent upon the change as affecting the entire street upon which the lot abuts. It is the continuous street which gives access. Any attempt to segregate and consider alone that part immediately in front of the lot would be not only unjust but impracticable. Any change which materially impairs that access in a manner peculiar to the property abutting upon the street is a special damage to each property so abutting and an invasion of the special property right of access by means of the continuous street. The damage is special because different not only in degree but in kind from that of the general public. Access imports not merely the means of passing from lot to street, but a means of travel to and from the lot to and from other portions of the city.

"It may not be of importance to the general public whether a particular street is vacated or not. It is important to the individual owner of abutting property that he shall be able to get to and from his residence or business, and that the public shall have the means of getting there for social or business purposes. In such a case access to thoroughfares connecting his property with other parts of the town or city has a value peculiar to him, apart from that shared in by citizens generally, and his right to the street as a means of enjoying the free and convenient use of his property has a value quite as certainly as the property itself. If this special right is of value,—and it is of value if it increases the worth of his abutting premises,—then it is, property, regardless of the extent of such value." *Long v. Wilson*, 117 Iowa 267, 93 N. W. 282, 97 Am. St. 315, 60 L. R. A. 720, 721.

See, also, *Borghart v. Cedar Rapids*, 126 Iowa 313, 101 N. W. 1120, 68 L. R. A. 306; *Webster v. Lowell*, 142 Mass. 324, 8 N. E. 54; *O'Brien v. Central Iron & Steel Co.*, 158 Ind. 218,

63 N. E. 302, 92 Am. St. 305, 57 L. R. A. 508. None of the
decisions of this court cited by the respondent as sustaining
the trial court go to that extent.

In *Smith v. St. Paul, Minn. & M. R. Co.*, 39 Wash. 355,
81 Pac. 840, 109 Am. St. 889, the question here involved
was not presented. The changes were in a cross-street upon
which the plaintiff's property did not abut.

In *Ponischil v. Hoquiam Sash & Door Co.*, 41 Wash. 303,
83 Pac. 316, the lot in question was upon a corner made by
two streets. A portion of one of these lying beyond the lot
was vacated. The other street upon which the lot also
abutted was not interfered with, and through it and the un-
vacated portion of the first mentioned street and other nearby
cross-streets easy access to the lot in all directions remained
available. The opinion rests not upon an inadmissibility of
evidence but on its insufficiency to show any special damages.
Had the vacated street been the only means of access, or had
the access been materially impaired, the decision must have
been different though the lot did not directly abut upon that
part of the street which was vacated. Moreover, the evi-
dence showed that the market value of the property was not
diminished by the vacation.

In *Mottman v. Olympia*, 45 Wash. 361, 88 Pac. 579, com-
plaint was made of the vacation of a street beyond that part
upon which the plaintiff's property abutted. A cross-street
intervened between his property and the vacated part of the
street. As in the *Ponischil* case the decision turned upon the
insufficiency of the evidence to show any material or special
interference with the access to the property; not alone upon
the fact that the property did not abut directly upon the
vacated part of the street.

In *In re Fifth Avenue and Fifth Avenue South*, 62 Wash.
218, 113 Pac. 762, the changes were in a cross-street upon
no part of which the plaintiff's property abutted. The writer
of this opinion is inclined to the personal view therein ex-
pressed by Judge Gose that "any arbitrary attempt to limit

the right to recover damages to the abutting owner is illogical," and it would certainly be much more illogical to further arbitrarily limit as a matter of law even the abutting owner's right to a recovery of such damages only as he can show will result from the change in that part of the street actually tangent to his property without reference to the fact that the change in the same street extends in either direction. This court has never gone so far and we are not, as in the *Fifth Avenue* case, bound by the doctrine of *stare decisis*.

In the case before us, the trial court in so limiting the evidence and the recoverable damages committed prejudicial error. It will be unnecessary to review the other assignments of error, since what we have said will sufficiently indicate the scope which the inquiry should take on a retrial.

The cause is reversed and remanded for a new trial.

MOUNT, MORRIS, FULLERTON, and CROW, JJ., concur.