[No. 11291.   Department One.   January 17, 1914.]

P. V. Pressentin, *as Marblemount Mercantile Company,
Respondent*, v. Hawkeye Timber Company, *Appellant*.[1]

Frauds, Statute of—Agreement to Pay Debt of Another—Direct or Collateral Promise—Evidence—Sufficiency. A promise is shown to be a collateral one, and within the statute of frauds, Rem. & Bal. Code, § 5289, relating to a special promise to answer for the debt of another, where it appears that plaintiff, on selling and delivering certain goods delivered to one N, to whom the promise was made, could not give a clear and consistent statement of the transaction, testifying that defendant told him to deliver the goods to N, and "the account would be taken care of;" to "go ahead and sell and we will see you get the money;" and "that is all he said, for me to furnish N the stuff and they would pay the bill," and that they would "take care of the account;" especially where the parties, in their correspondence, treated it as N's account; since every statement except the third is clearly collateral.

Appeal from a judgment of the superior court for Skagit county, Houser, J., entered January 30, 1913, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

*Winfield R. Smith*, for appellant.

*Hurd & Hilen*, for respondent.

Gose, J.—This is a suit to recover a balance alleged to be due on an open account for goods, wares, and merchandise. It is alleged that the goods were sold in Skagit county, in this state, to the Hawkeye Timber Company, a corporation organized and existing under the laws of the state of Iowa, and doing business in this state; that the Iowa corporation, in December, 1911, disincorporated; that its stockholders organized the defendant corporation under the laws of this state, under the same name, with the same stockholders, the same officers, the same assets as the old corporation; that the Washington corporation is the same business

[1]Reported in 137 Pac. 999.

entity, and that it assumed all the debts and liabilities of its predecessor. The defendant joined issue on the alleged sale to its predecessor. The case was tried to the court, resulting in a judgment for the plaintiff. The defendant has appealed.

The facts in brief are these: In December, 1909, and for nearly two years thereafter, the Iowa corporation was operating a shingle mill in Skagit county. On the date stated, one Norlin contracted to deliver it shingle bolts at a fixed price per cord. The goods in controversy were delivered to Norlin. The respondent claims that the Iowa corporation, through its local superintendent, promised to pay for the goods. This the appellant denies.

The respondent testified that the superintendent of the Iowa company told him to deliver the goods to Norlin, and that "the account would be taken care of." He also said that the superintendent told him: "If you make right prices, to go ahead and sell him; that we will see you get the money." Following this he said: "That is all he said; for me to furnish Norlin with the stuff and they would pay the bill." After the respondent had closed his case, he was recalled for further cross-examination, and was asked:

"Question: That is not in reference to a talk you now say you and he had in December, 1909, before this account with Norlin began? Answer: He simply told me to let Norlin have the stuff and they would take care of the account."

From December, 1909, until August 29, 1910, the company paid for the goods purchased by and delivered to Norlin. The accounts were sent direct to the company. The charges were made to the company by Norlin. On the date last mentioned, the company wrote the respondent as follows:

"We are inclosing check for $126 covering orders forwarded by you. In future instead of sending *Ed Norlin's bills* to this office, hand the bill to him and he will give you an order for the full amount." [The italics are ours.]

Thereafter, and until about July, 1911, the company paid Norlin's orders drawn upon it in favor of the respondent. It refused to honor his orders for goods delivered during the months of July and August, 1911, because Norlin was overdrawn.

The respondent's several versions of the promise bring the case within the statute of frauds. "Every special promise to answer for the debt, default or misdoings of another person" shall be void unless the contract or promise is in writing. Rem. & Bal. Code, § 5289 (P. C. 203 § 3). Every statement of the promise except the third is clearly collateral. The case is controlled by *Goldie-Klenert Distributing Co. v. Bothwell*, 67 Wash. 264, 121 Pac. 60, Ann. Cas. 1913 D. 849. In that case, an appeal was taken from a judgment entered upon a demurrer to the complaint. The complaint alleged that the defendant promised to "pay;" "become responsible for," and "indemnify and hold [the appellant] harmless." This was held to fall within the ban of the statute, the court saying:

"Viewing the complaint as an entirety, without selecting particular words or phrases and giving them undue weight, prominence, or emphasis, we are of the opinion that the alleged promise offends the statute."

If the Iowa corporation directed the respondent to furnish Norlin with goods and expressly promised to pay for them, the respondent should have been able to make a clear and consistent statement of the transaction. This he seemed unable to do, or at least failed to do. In three statements, he made the promise collateral and within the statute; in one he made it direct and without the statute.

In *Skinner v. Conant*, 2 Vt. 453, 21 Am. Rep. 554, an agreement "to see Conant paid if Andrus hired him," was held to be collateral. In *Wagner v. Hallack*, 3 Colo. 176, 34 Am. Rep. 76, it was held that the promise: "We will see the article paid for," or equivalent words, imports a collateral undertaking and falls within the ban of the statute. In

*Swigart v. Gentert*, 63 Neb. 157, 88 N. W. 159, a promise "that he would see that the plaintiff received his pay" was held to be collateral. In that case the court said: "But the promise to see the debt of another paid although it is the basis of extending credit is still within the statute of frauds." A promise to "pay or see that I had my pay" was held to offend against the statute. *Haverly v. Mercur*, 78 Pa. St. 257.

The respondent cites *Davies v. Carey*, 72 Wash. 537, 130 Pac. 1137. In that case there was a direct promise to pay the vendor for the goods. The respondent also cites a line of cases where the vendee had promised the vendor to pay a given sum of money to a third party as a part of the purchase price of the subject-matter of the transaction. These cases are clearly distinguishable. In such cases the vendee merely promised to pay his own debt.

The respondent also suggests that the account was carried on his books against the Hawkeye Timber Company. He admits, however, that the appellant had no notice of this fact. The record, taken as a whole, shows that the appellant treated the sales as having been made to Norlin. This view is made prominent by the letter of August 29, 1910, in which the account is referred to as Norlin's account.

We think the promise was a collateral one and within the statute. The judgment is therefore reversed, with directions to dismiss.

Crow, C. J., Ellis, Main, and Chadwick, JJ., concur.