[No. 14469. Department One. May 4, 1918.]

HENRY DIXON *et al.,* *Appellants,* v. PARKER, MORAN & PARKER *et al.,* *Respondents.*[1]

MUNICIPAL CORPORATIONS — CHANGE OF GRADE — POLICE POWER — CONTRACTOR'S BOND—NECESSITY. An ordinance requiring a railroad company to make a separation of street grades is an exercise of the general police power, and the duty of performance placed upon the railroad company is traceable thereto and not to a contractual assumption by the railway company; hence Rem. Code, § 1159 *et seq.,* requiring the city to take a bond from contractors on public work has no application thereto.

RAILROADS—CONSTRUCTION CONTRACTS—BOND—MECHANICS' LIENS— NOTICE—NECESSITY. The failure of a railroad company to take a bond from a contractor, under Rem. Code, § 1129, to respond in lieu of a lien, renders the company liable *in personam,* as provided by the act, for labor and materials furnished to subcontractors; but only when a lien has been duly filed therefor as required by the statute; this liability being only a statutory substitute for the lien *in rem* against specific property, to be perfected by the filing of notice of lien as required by Rem. Code, § 1134, when no bond was given.

FRAUDS, STATUTE OF — DEBT OF ANOTHER — DIRECT PROMISE. A verbal promise by representatives of a railroad contractor and the railroad to see that certain subcontractors were paid, if the main subcontractor did not pay them, is not sufficient to create an original or collateral undertaking and is void under the statute of frauds.

MUNICIPAL CORPORATIONS — RAILROADS — LOSS OF LIEN — EQUITY. Where there was no privity and no lien filed, the fact that a subcontractor's work on a separation of grades was a benefit to the city and the railroad company, would not render either liable in equity, the contractor having been paid in full.

INTEREST—CONTRACT. In an action on contract, interest should be allowed from the date the same was due and not from the date of the judgment.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered January 6, 1917, upon findings favorable to the plaintiffs, as against one

[1]Reported in 172 Pac. 856.

defendant, in an action on contract, tried to the court. Modified.

*R. L. Edmiston,* for appellants.

*Cannon & Ferris,* for respondents.

Ellis, C. J.—This is an action at law to recover moneys claimed to be due on account of work performed by plaintiffs, Dixon and Oliver, for defendants Parker, Moran & Parker. The facts are as follows: The city of Spokane, in February, 1912, passed an ordinance requiring the Northern Pacific Railway Company to separate the grade of its tracks from that of the streets within a portion of the city by elevating its tracks and changing the grade of certain streets. The ordinance required the railway company to bear all the expense of making the change and do all the work, except the replacing of such sewers and city utilities as were made necessary by changes in street grades. All of the streets from and including Division and Sprague at their intersection and west of it to Seventh avenue were affected by the change. The right of way of the railway company is 400 feet wide, except where reduced to 200 feet under the decision of the supreme court of the United States in *Northern Pac. R. Co. v. Ely,* 197 U. S. 1. To make the grade separation, it was necessary to reestablish the grades of the streets across the right of way and for a considerable distance beyond. The railway company was required to excavate within its right of way, and, in some cases, without its right of way, and to replace the streets at the new level in good condition. The ordinance is very lengthy and explicit as to how the work shall be done, and closes with a requirement that the railway company shall accept in writing the terms of the ordinance within forty-five days after its passage;

failing which the ordinance shall be null and void unless time be extended by the city council. It is conceded that the terms of the ordinance were so accepted by the railway company. Because of certain litigation touching the city's power to require the grade separation *(Holland v. Northern Pac. R. Co.,* 214 Fed. 920), the actual work was not commenced until October, 1914. A contract was then entered into by the railway company with W. J. Hoy, doing business as W. J. Hoy Company, by which Hoy undertook to do the entire work, with certain minor exceptions, as general contractor.

Under this contract the work was to be paid for by the railway company according to schedules made a part of the contract. Hoy sublet different parts of the work to subcontractors; among them, Parker, Moran & Parker, partners, who undertook the work of excavation. This contract was executed on December 18, 1914. Parker, Moran & Parker in turn sublet to the plaintiffs, Dixon and Oliver, by contract dated January 7, 1915, the drilling and blasting, but not the excavation and removal, of the solid rock necessary to be removed from the right of way and streets affected from Washington street east in order to place the streets in their new elevation. From Washington street west the work was done by others. The city, through its engineer, had general charge of the street changes so far as to direct what changes should be made and determine what would constitute a compliance with the ordinance. The city retained the right to construct the sewers either by day labor or contract, but the railway company was required by the ordinance to pay for such work. Proceeding under their contract, plaintiffs undertook the performance of their contract with Parker, Moran & Parker. The railway company filed no bond as required by § 1129 of me-

chanics' lien law.  Hoy gave a bond to the railway company conditioned for the faithful performance of his contract and to pay all obligations by him assumed thereunder.  It appears that Parker, Moran & Parker agreed to give Hoy a bond but failed to do so.  Plaintiffs, Dixon and Oliver, gave a bond to Parker, Moran & Parker, but it does not appear in the record.  No bond was filed in the office of the county auditor.  Under the contract of Hoy with Parker, Moran & Parker, Hoy was to pay ninety cents per cubic yard for solid rock excavation, of which the drilling and blasting was, of course, a part.  Under their contract with Parker, Moran & Parker, plaintiffs were to be paid for the blasting sixty cents per cubic yard.  These payments were to be made, the first on estimates received by Hoy from the railway company as to excavation, and the second on estimates received by Parker, Moran & Parker from Hoy on his estimate of the work done.

The first controversy arose between Parker, Moran & Parker and plaintiffs in the latter part of May when the first estimate for the April work was given.  Plaintiffs claimed that they were then entitled to $2,000.  Parker, Moran & Parker figured plaintiffs' part of the estimate at $806.40, which plaintiffs refused.  Plaintiffs appealed to E. J. Cannon, attorney for the railway company.  As to what occurred and what agreement was then made, the evidence is in the sharpest conflict.  Plaintiffs claim that Cannon then promised that the railway company would see that they were paid the money then and thereafter to become due for their work and directed them to take the matter up with Hoy's office; that they then went to Hoy's office, where Hoy's purchasing agent and superintendent also agreed to see that they were paid and, in effect, guaranteed future payments.  Cannon and Hoy's superintendent and purchasing agent all testified that the

only promise made was to endeavor to secure orders from Parker, Moran & Parker for plaintiffs' payments on future estimates so that plaintiffs would receive their pay directly from Hoy and in Hoy's office. Whatever the agreement, it is admitted that, at that time, Hoy paid $1,000, which, with the $806.40 paid by Parker, Moran & Parker, enabled plaintiffs to meet their current pay-roll. Subsequently plaintiffs also received from Hoy in Hoy's office an estimate of $6,800 in June, and a further estimate of $8,000 in July, 1915. These last payments, however, were made on receipts approved by Parker, Moran & Parker, thus corroborating in a measure the claim of Hoy and the railway company as to what the agreement was. Further payments were refused by Hoy on the ground that Parker, Moran & Parker had canceled and countermanded the order.

We find it unnecessary to set out the voluminous pleadings. It will suffice to say that the court sustained a demurrer of the city to the complaint, and the cause was tried to the court without a jury as against the other defendants. The court, upon appropriate findings of fact and conclusions of law, adjudged that plaintiffs recover from Parker, Moran & Parker a balance of $10,559.20, with 6 per cent interest from the date of the judgment, but that plaintiffs take nothing against the defendants city of Spokane, the Northern Pacific Railway Company and the W. J. Hoy Company, as to each of which defendants the action was dismissed without date. Plaintiffs, Dixon and Oliver, appeal.

Appellants contend that the city's demurrer to their complaint was erroneously sustained. It is urged that the city was liable to them under the terms of Rem. Code, § 1160, because it failed to take from the railway company the bond required by §§ 1159 and 1161 for the protection of laborers, mechanics, subcontractors and materialmen. It is argued that the work of eliminat-

ing the grade crossings of the railroad tracks was a public work done on behalf of the city; that the ordinance requiring the separation, when accepted by the railway company, was the exercise of a contractual power, not the police power; that, therefore, the work falls within the purview of the statute making the city liable because of its failure to exact the statutory bond required to be taken from persons doing work for it under contract. If the premises were sound the conclusion would be irresistible. But the premises are not sound. Appellants' minor premise, that the relation between the city and the railway company created by the ordinance was purely contractual, is based mainly upon a decision of the Illinois supreme court which contains some language which supports that contention and much which does not. *Chicago v. Jackson*, 196 Ill. 496, 63 N. E. 1013, 1135. The sole question there involved was as to the right of a property owner, whose property had been damaged by a change of street grade necessitated by a grade separation of a street and railroad, to recover compensation from the city. The court, after intimating somewhat doubtfully that the ordinance was contractual rather than an exercise of the police power, uses language which plainly shows that whether the ordinance was contractual or not was wholly immaterial as between the city and the owner of abutting property. The court said:

"It seems to be thought by counsel for the city that inasmuch as the railroad company has been lawfully compelled to abandon its tracks on the street and so elevate them as to overcome the grade crossing, at great loss and expense to it, without compensation, neither should the plaintiff, who has suffered loss on account of the construction of the same work, be allowed to recover damages therefor. The position, upon first impression, seems plausible, but when care-

fully considered is clearly untenable. The relations of the parties to the city are entirely different. That which called for the exercise of the police power by the municipality was the operation of the railroad in running its trains across the street. Neither the location nor use of the plaintiff's property endangered the public health or safety, and it must be admitted that if the city had attempted to interfere with that property by obstructing his access thereto under any claim of a police regulation, it would have been a flagrant abuse of the police power and no defense whatever to an action for the resulting damages. The plaintiff bears no relation to the railroad company. He had nothing to do with the operation of its road. He makes no claim in his declaration on account of the elevation of the tracks. His cause of action is against the city for so changing the grade of the street as to damage his property.''

Whatever may be said of the ordinance there discussed or of that court's views as to the nature of the power involved, our own decisions are controlling here. They distinctly hold that the power to compel grade separation is an incident of the general police power expressly conferred by the constitution and statutes upon cities of the first class. Const., art. 11, §§ 10 and 11; Rem. Code, § 7507, subds. 7, 8 and 9. In *Spokane v. Spokane & I. E. R. Co.*, 75 Wash. 651, 135 Pac. 636, we said:

''The power to be exercised in providing for a separation of grades, as here attempted, is not only attributable to the general police power vested in the city in legislating for the welfare and safety of its citizens in dealing with an admittedly dangerous situation, but is referable to another power—that of providing for changes in the grades of streets and locating railroad and street railway lines thereon, providing for changes of grade in such locations and other like powers as found in subdivisions 7, 8 and 9 of § 7507, Rem. & Bal. Code.''

In *Spokane v. Thompson,* 69 Wash. 650, 126 Pac. 47, we said:

"It is also well established that a city in the exercise of its police power over the streets has authority to change the grade of a street to avoid a dangerous railroad crossing and that such a change is for the benefit of the public and is a public use."

See, also, *Detamore v. Hindley,* 83 Wash. 322, 145 Pac. 462. In fact, the supreme court of Illinois, in a more recent case than that above cited, has in effect repudiated the dictum relied upon by appellants. Touching a grade separation ordinance, it has said:

"The power of the council to pass such an ordinance is not an open question nor is the source of its authority doubtful. It is from the police power that the council gets its right." *Murphy v. Chicago, R. I. & P. R. Co.,* 247 Ill. 614, 93 N. E. 381.

The mere fact that the railway company was required to, and did, accept the terms of the ordinance and in a sense thus agreed to do in a *certain specified manner* what it could be compelled to do in *some* adequate manner did not change the character of the ordinance from an exercise of the police power into a mere exercise of the contractual function of the city. The acceptance was but an agreement to conform to the police mandate of the city in a specified manner agreeable to both parties—a mere acquiescence in the exercise of the city's police power by the railway company. True, the city in requiring the separation of grades exercised its police power in the public interest. *Spokane v. Thompson, supra.* The public welfare is, indeed, the very basis of the police power. But when the requirement was once made, the duty of performance was that of the railway company. That duty was traceable to the city's command, not to a mere contractual assumption by the railway company. In do-

ing the work it was doing its own work, not that of the city. In fact, the larger part was the modification of its own right of way and roadbed. We are clear that the statute requiring the taking of a bond from the contractor as security for labor, etc., on municipal contracts for public work, Rem. Code, § 1159 *et seq.*, has no application to such a case as this. The demurrer of the city was properly sustained.

It is next contended that the railway company was liable for the labor and material furnished by appellants as subcontractors in the prosecution of the work. It is asserted that the property of an operating railroad company cannot be subjected to liens for labor or material furnished in alteration or repair; that this work was a work of alteration or repair; that, therefore, the railway company was liable because it failed to take the bond required by statute, Rem. Code, § 1129, to respond in lieu of such liens. Again, the premises are unsound and the conclusion correspondingly faulty. The decisions cited by the appellants in this connection go no further than to hold that the lien cannot be enforced by sale of property essential to the operation and maintenance of the road for the public purposes for which it was established. *Buncombe County Com'rs v. Tommey,* 115 U. S. 122; *Connor v. Tennessee Cent. R. Co.,* 109 Fed. 931, 54 L. R. A. 687; *Pittsburg Testing Laboratory v. Milwaukee Electric R. & L. Co.,* 110 Wis. 633, 86 N. W. 592, 84 Am. St. 948. Our statute, however, expressly accords a lien in such cases. Rem. Code, § 1129, after providing for the lien in favor of every person performing labor, etc., in the construction, alteration or repair of any railroad, makes the contractor, subcontractor, architect, builder or person having charge of the work the agent of the owner for the purpose of the establishment of the lien, provides

that the railroad company shall exact a bond from the contractor to respond in lieu of lien, and declares:

"And if any such railroad company shall fail to take such bond, such railroad company shall be liable to the persons herein mentioned to the full extent of all such debts so contracted by such contractor."

We have held that the bond, when taken and properly filed, dispenses with the agency necessary to create the lien. *Laidlaw v. Portland, Vancouver & Y. R. Co.*, 42 Wash. 292, 84 Pac. 855; *Du Pont De Nemours Powder Co. v. National Surety Co.*, 94 Wash. 461, 162 Pac. 866. It is the agency declared by the statute which creates the privity between the railroad company and the lien claimant which sustains the lien. The failure to take the bond required by the statute creates a statutory liability enforceable *in personam* against the railroad company, but this only when a lien has been filed invoking the statutory agency in manner and time as required by the statute. The filing of the statutory lien notice furnishes the privity between the company and the lien claimant which would not otherwise exist and without which a personal liability, in the absence of the bond, could not be maintained. This liability is but a statutory substitute for the lien *in rem* against the specific railroad property. It seems too plain for argument that, though the filing of the lien is not necessary where the bond is taken dispensing with the statutory agency, if the bond be not taken the liability against the railroad company, whether asserted *in rem* or *in personam*, cannot be maintained without the filing of the lien creating the agency and supplying the privity necessary to the maintenance of the liability. Indeed, the creation of the privity by notice of lien would seem to be more imperative where a personal liability is asserted than in case of a lien *in rem*. In the case before us, appellants were subcontractors of a subcon-

tractor of the principal or general contractor. There was no privity of contract between the railway company and the appellants. That lack of privity was not supplied or overcome in the only way in which it could be supplied or overcome in the absence of the lien bond; viz., by filing the notice of lien as required by Rem. Code, § 1134. It follows that, unless there was some valid agreement on the part of the railway company to pay, or a guaranty of payment, for appellants' labor, they cannot recover as against the railway company. In the absence of such an agreement the railway company was under no duty to pay appellants or to refuse to pay Hoy any part of the estimates due to Hoy under its contract with Hoy.

But appellants contend that there was a specific agreement on the part of both the railway company and Hoy to pay for the work done by appellants and to guarantee future payments. As to whether there was such an agreement the evidence was voluminous and extremely conflicting. We cannot discuss it in detail within the reasonable limits of an opinion. An attentive examination of the evidence, however, convinces us that there was nothing more than an agreement by the railway company's attorney and assistant engineer in charge of the work for the railway company to advance money with Hoy's consent to meet a specific payroll, which was done, and to charge the amount to Hoy, who, in turn, charged it to Parker, Moran & Parker, and a further promise to arrange for other payments on estimates through Hoy and on orders of Parker, Moran & Parker. The evidence is far from convincing that there was any agreement on the part of the railway company or any one in its behalf to pay future estimates or to guarantee or make future payments except on such estimates and orders. It appears that

this was done through an arrangement with Hoy until Parker, Moran & Parker refused further orders.

It is next contended that the evidence shows that Hoy, in consideration that appellants continue the work, agreed to pay for such work if Parker, Moran & Parker failed to do so. A careful consideration of the evidence touching this question impels us to the conclusion that Dunnigan, Hoy's purchasing agent, and Holman, Hoy's superintendent, promised no more than to get Moran to sign written orders on Hoy from month to month which would justify Hoy in paying to appellants the money coming due on monthly estimates to Parker, Moran & Parker. This, as before stated, it appears was done on the next two estimates; one for $6,800, the other for $8,000, and the receipts for such payments bear the approval of Parker, Moran & Parker. Appellants filed no lien against the railway company which would have justified Hoy or the railway company in making such payments without an order from Parker, Moran & Parker, nor did appellants garnishee Hoy for any amount claimed to be due from him to Parker, Moran & Parker which would have justified Hoy in withholding pay to the latter. Moreover, the alleged promise, even if the evidence justified a finding that it was made just as claimed by appellants, being verbal would have been void under the statute of frauds. Taken in the light most favorable to appellants, the promise claimed was no more than that Hoy and the railway company would see that appellants were paid, which, as this court has frequently held, was not sufficient to create an original or collateral undertaking on the part of the railway company or of Hoy. *Campbell v. Weston Basket & Barrel Co.*, 87 Wash. 73, 151 Pac. 103; *Goldie-Klenert Distributing Co. v. Bothwell*, 67 Wash. 264, 121 Pac. 60, Ann. Cas. 1913D 849; *Pressentin v. Hawkeye Timber Co.*, 77

Wash. 388, 137 Pac. 999; *Bresler v. Pendell,* 12 Mich. 224.

Finally, appellants argue that the city, the railway company and Hoy should all be held liable in equity to pay appellants the reasonable value of their work because it contributed to the desired result so that all of these defendants received its benefit. The same argument might be made in every case where a laborer, materialman or subcontractor has lost his right to a lien by failure to file the lien notice as required by law. We know of no principle of equity which would sustain a judgment in such a case merely because the owner of the property had received the benefit, there being no privity, either of contract or in law, between the party sought to be charged and the party claiming the relief. Both Hoy and the railway company have paid to the persons to whom they were bound by contract to pay, all they agreed to pay.

One other matter requires notice. The court found that the amounts due from Parker, Moran & Parker to appellants became due on November 1, 1915, but allowed interest on those amounts only from the date of the judgment. This was apparently an oversight. The judgment should be modified so as to allow interest on the sums found due from November 1, 1915. In other respects, the judgment is affirmed.

WEBSTER, MAIN, PARKER, and FULLERTON, JJ., concur.