[No. 15380.  Department Two.  December 2, 1919.]

SEIFFERT COMPANY, *Respondent,* v. GEORGE P. WRIGHT, *Appellant.*[1]

TRIAL (54) — QUESTIONS OF LAW OR FACT — UNCONTROVERTED EVIDENCE. Where there is no substantial conflict in the testimony, whether a promise was a collateral one to answer for the debt of another, or an original undertaking, is one of law.

FRAUDS, STATUTE OF (4)—DEBT OF ANOTHER—COLLATERAL OR ORIGINAL PROMISE. An oral statement by a general contractor, to induce one employed by a subcontractor to continue on the work, to go ahead and he would see him paid, is a collateral promise to answer for the debt or default of another, and void under the statute of frauds, where the work continued as in the past with the subcontractor in charge.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered March 3, 1919, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

*Ellis & Evans,* for appellant.

*Stiger & Dally,* for respondent.

TOLMAN, J.—In June, 1915, the appellant entered into a contract with Snohomish county for the construction of a system of drainage, etc., and a concrete bridge with flood gates on the Munroe-Snohomish road in that county, and thereafter sublet the construction of the bridge and flood gates, including certain fills, to one J. B. Snyder. A surety company bond was taken from the subcontractor for the protection of appellant, and thereafter Snyder contracted with respondent to haul the material necessary to make the fills, which is now in controversy, on a yardage basis. As Snyder's contract called for the completion of the work by December 1, 1915, and to avoid the expense

[1]Reported in 185 Pac. 577.

and delays incident to floods and high water which might affect that part of the work not sublet, the appellant, with apparent good reason, was eager to have Snyder complete his work as promptly as possible. December 1, when, according to Snyder's contract, the work should have been completed, found the work far from finished, Snyder apparently in difficulty, but still on the work. Respondent, becoming fearful that Snyder could not pay for the hauling of the material in which it was engaged, on December 4, threatened to cease work, but some arrangement was made that day by appellant's superintendent of the work by which it continued to haul until the next day, December 5th, when appellant appeared on the work and, according to the testimony of respondent's president, the following occurred between appellant and himself:

"Mr. Wright was present at the time Mr. Niles asked me where I was going. I told him I was going to send the trucks home. He said, 'come back and talk with Mr. Wright.' Wright asked me what I wanted. I told him Mr. Snyder had hard luck on that fill, and I could not see where our money was going to come from, and refused to do any further hauling until I was assured where our money was going to come from. Mr. Wright then said to me, 'you go ahead and make this fill and I will see that you are paid.' 'Very well,' I said, 'I will haul for this job,' and he said, 'I guess I will have to pay all the bills anyhow.' I said 'all right, Mr. Wright, we will haul for you, one yard for you or a million yards.' I waived my hands to the truck and said 'go ahead and finish the job,' and I left."

Thereafter the respondent hauled the total yardage required. Snyder abandoned the contract on January 4, 1916. Thereupon the appellant proceeded to complete the work, and, after doing so, brought suit against the bonding company which was surety on Snyder's bond, setting up as a part of his claim the

amount earned by respondent in hauling the material for the fill. Respondent demanded payment of its claim from appellant, to whom it had been charged, and appellant and his attorneys wrote it several letters agreeing to pay so much of the claim as might be recovered from the bonding company in that action, and calling upon respondent to furnish the evidence necessary for such recovery, and offering to permit respondent's attorneys to participate in the prosecution of the action. Witnesses were furnished by respondent to testify upon the trial of that action, but the respondent's attorneys refused to accept any responsibility therefor or to be bound by the result of the action.

Upon the trial of the suit upon the bond, the court found that respondent did not file any notice, as required by statute, with the county commissioners, or give any notice of claim under the bond, and that appellant's promise to pay was a collateral one and void under the statute of frauds, and allowed only the items which accrued in February, 1916, after Snyder had abandoned the work. Upon the collection of the judgment from the bonding company, the appellant paid the respondent the amount of his recovery on these items, which was credited on account only, and this action was brought to recover the balance.

Appellant defended upon two grounds: first, the statute of frauds; and second, that the judgment in the suit on the bond was binding upon the respondent, and the matter is now *res judicata*. From the judgment against him, appellant brings this case here on appeal, and by proper assignments of error raised the defenses relied upon by him in the trial court.

To determine whether a given state of facts constituting an agreement comes within the statute of frauds, the court must consider all of the evidence and

determine therefrom the intention of the parties as of the time when the purported agreement was made. The testimony in chief by respondent's president has already been quoted, and this was qualified on cross-examination by the witness admitting that he testified in the suit on the bond to the effect that he already had an agreement with Snyder as to the price to be paid for the hauling; that he had told appellant's superintendent that if Mr. Wright "would see that we receive our money we would go ahead"; that the superintendent later told him that Mr. Wright would not stand by the agreement, and that then the conversation with Wright covered by the testimony in chief occurred, in which Wright said, "you may go ahead with the work and I will see that payment is made," and further, "Q. Did you say, 'and the second part was for J. B. Snyder with Mr. Wright making payment.' That was at the Snohomish fill to J. B. Snyder? A. I might have testified to that."

As so modified by the cross-examination, the testimony on behalf of respondent is in exact harmony with that given by Mr. Wright in his own behalf, to the effect that respondent's contract was with Snyder; that Snyder was still in charge of the work; that the deliveries were made to Snyder after the conversation referred to, as well as before, and that as he felt fully protected by the bond, he would arrange to see respondent paid. There being no substantial conflict in the testimony, the question as to whether the promise was a collateral one to answer for the debt or default of another, or an original one to pay a debt of promisor, is one of law. We feel constrained to hold that the agreement, viewed from the standpoint of either party, falls within the statute, as each clearly then intended that the work should continue in the future, as in the past, to be done for Snyder upon the

terms of the contract theretofore existing between the respondent and Snyder, and that appellant's only obligation was to see that payment was made for the work so done. Clearly this was a special promise to pay Snyder's debt. *Goldie-Klenert Distributing Co. v. Bothwell,* 67 Wash. 264, 121 Pac. 60, Ann. Cas. 1913D 849; *First National Bank v. Geske & Co.,* 85 Wash. 477, 148 Pac. 593, Ann. Cas. 1917B 564; *Pressentin v. Hawkeye Timber Co.,* 77 Wash. 388, 137 Pac. 999; *Dixon v. Parker, Moran & Parker,* 102 Wash. 101, 172 Pac. 856. We think the promise in this case is clearly distinguishable from the promise held to be an original one in *Burns v. Bradford-Kennedy Lumber Co.,* 61 Wash. 276, 112 Pac. 359, and that the facts in this case fall short of establishing that the leading purpose of the promisor was to subserve some interest or purpose of his own within the meaning of the rule there mentioned. As what we have said calls for a reversal of the judgment, it is unnecessary to consider the defense of *res judicata.*

The judgment is reversed, with directions to dismiss the action.

HOLCOMB, C. J., MOUNT, FULLERTON, and BRIDGES, JJ., concur.